**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**McALLEN DIVISION**

| | | |
|---|---|---|
| **Rosa Montes Ramos Individually and as** | § | |
| **the Administratrix of the Estate of** | § | |
| **Jose Ernesto Ramos, Rosa Cristina Ramos,** | § | |
| **Joe Edward Ramos, John Aaron Ramos,** | § | |
| **Ricardo Jimmy  Ramos and Vicente Chaires II,** | § | |
| **Plaintiffs** | § | |
| | § | |
| **v.** | § | **Civil Action No._____** |
| | § | |
| **Omar Lucio, Cameron County Sheriff** | § | **(JURY)** |
| **Robert Oyervidez, Juan Cortez, III,** | § | |
| **FNUK Garcia, Ltd. Raul Rodriguez, Cameron** | § | |
| **County Deputies, Office of Constable, Precinct 6,** | § | |
| **Cameron County, Texas, Constable Merced** | § | |
| **Burnias, Precinct 6, Cameron County, Texas and** | § | |
| **Sgt. Refugio Perez, Precint 6 Deputy Constable,** | § | |
| **For Cameron County, Texas Defendants** | § | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

## I. JURISDICTION AND VENUE

A. This action is being filed pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985 to address injuries and death suffered by JOSE ERNESTO RAMOS for deprivation of rights under color of law secured by the Fourth Amendments to the United States Constitution. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

B. Venue is proper in the United States District Court, Southern District of Texas, McAllen Division, pursuant to 28 U.S.C. § 1391.

C. Additionally, Plaintiffs bring state statutory and tort claims against the Defendants for wrongful death, loss of consortium, negligence, gross negligence, negligence supervision, assault and battery, and intentional infliction of emotional distress. This Court has Supplemental Jurisdiction of the state law claims pursuant to 28

1

U.S.C.§1367.

## II. PARTIES:

### A. PLAINTIFFS

1. Plaintiff Rosa Montes Ramos is a resident of Harlingen, Cameron County, Texas and the Administratrix of the Estate of JOSE ERNESTO RAMOS and the natural mother of JOSE ERNESTO RAMOS. She brings this action on behalf of herself and on behalf of

JOSE ERNESTO RAMOS and the Estate of JOSE ERNESTO RAMOS.

2. Plaintiff Rosa Cristina Ramos is a resident of San Benito, Cameron County, Texas, and is the surviving spouse of JOSE ERNESTO RAMOS.

3. Plaintiffs Joe Edward Ramos, John Aaron Ramos, and Ricardo Jimmy Ramos are residents of San Benito, Cameron County, Texas and are the sons of the deceased, JOSE ERNESTO RAMOS. Plaintiff Vicente Chaires is the son of Jose Ernesto Ramos and resides in the state of Iowa.

### B. DEFENDANTS

1. Defendant Robert Oyervidez, individually and in his official capacity as a Deputy Sheriff was employed, at all relevant times and at the time of the death of JOSE ERNESTO RAMOS, with the Defendant Cameron County Sheriff's Department. At all times relevant to this action, Defendant Oyervidez acted under color of law.

2. Defendant Juan Cortez, III, individually and in his official capacity as a Deputy Sheriff was employed, at all relevant times and at the time of the death of JOSE ERNESTO RAMOS, with the Defendant Cameron County Sheriff's Department. At all times relevant to this action, Defendant Cortez acted under color of law.

3. Defendant FNUK Garcia, individually and in his official capacity as a Deputy Sheriff was employed, at all relevant times and at the time of the death of JOSE ERNESTO RAMOS, with the Defendant Cameron County Sheriff's Department. At all times relevant to this action, Defendant Garcia acted under color of law.

4. Defendant, Lt. Raul Rodriguez, individually and in his official capacity as a Deputy Sheriff was employed, at all relevant times and at the time of the death of JOSE ERNESTO RAMOS, with the Defendant Cameron County Sheriffs Department. At all times relevant to this action, Defendant Garcia acted under color of law.

5. Defendant, Sheriff Omar Lucio, in his official capacity as Sheriff of the Cameron County Sheriff's Department an integral part of the County of Cameron, a political subdivision, organized and existing under the laws of the State of Texas, for his acts and those of sheriff's deputies Oyervidez, Cortez, Garcia and Ltd. Rodriguez who were at all relevant times employees of the sheriff's department acting under of color of law whose acts of misconduct are attributable to the Sheriffs' as agents of the Sheriffs and its Department. At all times throughout this Complaint, it is alleged and incorporated herein by reference, that said peace officers' and/or deputies' actions of seizing and restraining and causing the death of JOSE ERNESTO RAMOS were objectively unreasonable and the County viz a vi the Sheriff's Department is liable for the Sheriffs and Deputy Sheriffs, Constable and Deputy Constable's actions in causing the injuries and death of MR. JOSE ERNESTO RAMOS.

6. Defendant Sgt. Refugio Perez, individually and in his official capacity as a Precinct 6 Deputy Constable for Cameron County, Texas was employed, at all relevant times and at the time of the death of JOSE ERNESTO RAMOS, with the Defendant Cameron County Constables Office. At all times relevant to this action, Defendant Perez acted under color of law.

3

7. Defendant Constable, Merced Burnias, in his official capacity as employer of Sgt. Refugio Perez as a deputy constable in Precinct 6, for Cameron County, Texas did employ said deputy at all relevant times and at the time of the death of JOSE ERNESTO RAMOS. At all times relevant to this action, Defendant Burnias acted under color of law for and within the duties of the office of Constable.

8. Defendant, The Office of Constable, Precinct 6, Cameron County, Texas by and through its Constable, Merced Burnias.

## III. FACTS

### A. Search and Seizure: Arrest and Restraint

1. All paragraphs herein are respectfully alleged and reincorporated throughout this entire Complaint.

2. JOSE ERNESTO RAMOS was a 37 year-old Hispanic male who was a native of San Benito, Cameron County, Texas. At the time that he was killed, MR. JOSE ERNESTO RAMOS, was gainfully employed with Sea Ranch Restaurant. He had been working there for a year.

3. On information and belief, the events began in the early morning hours of January 27, 2006, when Rosa M. Ramos, the wife of the decedent, called 911 because her husband had come home delusional and in fear that someone was wanting to hurt him. Mrs. Ramos called 911 so that deputies would come to her home and calm her husband down. Sheriff's Deputy Robert Oyervidez was dispatched to the Ramos residence in reference to a domestic disturbance in progress involving and intoxicated male subject possibly high on some type of narcotics. Shortly after the call Sheriff's Deputy, Juan Cortez, III, arrived at the Ramos residence and was the first deputy on the scene since he was already in route. Upon reaching the front door Deputy Cortez

heard the decedent, JOSE ERNESTO RAMOS, yelling vulgar language toward his wife. Deputy Cortez, made contact with the decedent and noticed that he was acting very strangely, hallucinating like if more people were inside the room, trying to fight him. Deputy Cortez, found and should have recognized that the decedent was under some mental condition of paranoia and in fear of someone looking for him. He was combative, delirious and delusional. JOSE ERNESTO RAMOS was, therefore, in a state of apparent diminished capacity when Deputy Cortez first arrived and subsequently when Deputy Sheriff Robert Oyervidez and Sgt. Refugio Perez, Deputy Constable, arrived. These deputies knew from the initial 911 call by Mrs. Ramos and subsequently by the decedent's behavior that the decedent was in a state of apparent diminished capacity due to drugs, alcohol, other discernable mental condition, or some other condition apparent to the deputies at the time. When Deputy Cortez, entered the home the decedent was in a delusional state and saying that he was not going to leave with them, ie. not leaving with the phantom people in the room that were after him trying to fight him. If at all, the decedent was refusing to cooperate with the phantom people in the kitchen not the deputy. The deputy was seen as one of the phantom people, not an officer of the law. Moreover, a person in an "excited delirium" state does not comprehend verbal directives. The Deputies unreasonably failed to act in accordance with the appropriate conduct after recognizing that the demeanor and behavior of the decedent which was one of a state of diminished capacity due and induced by narcotics, alcohol, was under a discernable mental condition or some other condition apparent to the deputy(ies) at the time. On attempt by Deputy Cortez to restrain him a scuffle ensued. Deputy Cortez scuffled with the decedent in the kitchen; wrestled him to the floor and continued to strike him. The scuffle continued outside the

home after the decedent was dragged on the floor outside allegedly in a continued effort to restrain him. By then, however, the decedent was so physically exhausted he was no longer combative. Thereafter, Sgt. Perez arrived. He too joined the scuffle allegedly in aid of Deputy Cortez to restrain and arrest the decedent. Shortly thereafter, Deputy Sheriff Oyervidez and Deputy Sheriff, FNUK Garcia also arrived to assist. The decedent was restrained with handcuffs at the wrists behind his back and at the ankles with his legs bent backwards and toward his back. The wrists and the ankle iron shackles were tied together. This type of restrained is generally known as the "hog-tie". The decedent was hog-tied and placed in a face down prone position by the four Deputies, Oyervidez, Garcia, Cortez and Sgt. Perez. He was further restrained by having one of the deputies, weighing about 300 pounds, sit on the decedent after he was hog-tied, and placed a knee to his neck. He was pushed down headfirst onto the ground such that the hospital emergency attendants noticed gravel on his face. The decedent was heard by his wife and neighbors yelling and asking to wipe off the blood from his face; asking for water to drink and complaining that he could not breath. After being hog-tied he was no longer combative. In fact, he had stopped being combative after being dragged from inside the house early in the scuffle. The deputies nevertheless ignored his pleas. An offer of water by a neighbor was refused by the deputies. The decedent stopped breathing and became motionless. When EMS arrived he was still hog-tied. The decedent was kept hog-tied in a face down prone until his arrival at Valley Baptist Medical Center on the same day. A neighbor heard one of the deputies call for a Justice of the Peace. JOSE ERNESTO RAMOS was "dead on arrival" at Valley Baptist Medical Center.

4. Upon information and belief, Mr. Ramos had been drinking and had consumed cocaine during the afternoon or evening of January 27, 2006 of which the deputies

knew. Upon information and belief, Plaintiffs state that when the deputies were dispatched to the scene they were informed that they would probably be dealing with a person in a state of diminished capacity due to drugs, alcohol, a discernable mental condition or some other condition which was apparent to the officer during the entire event.

5.  Upon information and belief, any minimally competent and reasonable trained deputy understands and/or should understand that in responding to a call concerning a person in a diminished capacity due to drugs, alcohol, a discernable mental condition or any other condition apparent to the deputies, that officer is not to hog-tie or place him in a face down prone position because it results in positional asphyxia resulting in serious injury and death. The deputies knew or should have known that it was unreasonable, negligence, gross negligence and with deliberate indifference to take such action in their seizure and arrest of the Defendant. Said conduct was known by all officers to be excessive deadly force during the time and in the manner that it was undertaken.

6.  Upon information and belief, as Mr. Ramos overtly and verbally demonstrated his inability to breath when one of the Defendants placed a knee on Mr. Ramos's head and held it face-down into the ground making it even more difficult to breathe. Any minimally competent and reasonable trained deputy understands and/or should know that in responding to a call concerning a person in a diminished capacity as alleged herein is not to place a knee on a person in combination with being hog-tied and placed face down in a prone position because it results in serious injury and death due to positional asphyxia. The deputies knew or should have known that it was unreasonable, negligence, gross negligence and with deliberate indifference to take such action in their seizure and arrest of the Defendant. Said conduct was clearly established and the deputies should have known that such conduct to amounted excessive deadly force during the time and in the manner that it was undertaken.

7.  Upon information and belief, as Mr. Ramos overtly and verbally demonstrated his inability to breath when one of the Defendants sat on Mr. Ramos's back and held him face-down and into the ground making it even more difficult to breathe. Any minimally competent and reasonable trained deputy should have known that in responding to a call concerning a person in a diminished capacity due to drugs, alcohol, a discernable mental condition or any other condition apparent to the deputies, that officer is not to hog-tie or place him in a face down prone position should not sit on a person in such diminished capacity in combination with being hog-tied and placed face down in a prone position because it results in positional asphyxia resulting in serious injury and sometimes death. The deputies knew or should have known that it was unreasonable, negligence, gross negligence and with deliberate indifference to take such action in their seizure and arrest of the Defendant. Said conduct was clearly established and the deputies should have known that such conduct amounted to excessive deadly force during the time in the manner that it was undertaken.

8.  Upon information and belief, at not time did any of the defendant deputies act to stop to check and monitor the decedent's condition prior to his death and after being hog-tied and placed in a face down prone position, while being sat on by a deputy or while a knee was placed on his neck Any minimally competent and reasonable trained deputy understands and/or should understand that in responding to a call concerning a  person in a diminished capacity due to drugs, alcohol, a discernable mental condition or any other condition apparent to the deputies, and the placing of a knee on a person in a diminished capacity in combination with being hog-tied and placed face down in a prone position results in positional asphyxia resulting in serious injury and sometimes death. The deputies knew or should have known that it was unreasonable, negligence, gross negligence and with deliberate indifference to take such action in

their seizure and arrest of the Defendant. Said conduct was clearly established and the deputies should have known that such conduct to amounted excessive deadly force during the time and in the manner that it was undertaken.

9. Upon information and belief, any minimally competent, reasonable, and trained sheriffs deputy supervisor, such as Ltd. Raul Rodriguez, understands and/or should understand that in responding to a call concerning a person in a diminished capacity due to drugs, alcohol, a discernable mental condition or any other condition apparent to the deputies, that officer is not to hog-tie or place the person in a face down prone position, and the placing of a knee or sitting on the person in combination with being hog-tied and placed face down in a prone position causes positional asphyxia resulting in serious injury and death. As a supervising deputy, Ltd. Rodriguez knew or should have known that it was unreasonable, negligent, gross negligent, and with deliberate indifference to take such action in their seizure and arrest of the Decedent and should have stopped the conduct as it occurred and as he was observing it. To the contrary Ltd. Rodriguez's conduct was unreasonable, negligent, gross negligent and with deliberate indifference in having done nothing. Said conduct was known by all officers to be excessive deadly force during the time and the manner that it was undertaken. In spite of the fact that all deputies on the scene at the time of the seizure and restraint of the decedent said conduct continued in the presence of Lt. Rodriguez while acting as a supervising deputy sheriff and deputy for the Sheriffs Department. Although fully being briefed, Ltd. Rodriguez, did not order or in any other way instruct the deputies to stop the hog-tie restrained of the decedent, reposition him from the face down prone position, or remove the knee to his neck while being sat on by a deputy sheriff. Ltd. Rodriguez, further unreasonably, negligently, gross negligently and with deliberate

indifference failed to undertake any action of his own to un-do the hogtying; to turn the decedent into a position where he could breathe; or failed to monitor the decedent's physical condition and prevent his death. Said Deputies should have known that it was clearly established that such conduct to amounted excessive deadly force at the time and manner in which it was undertaken as to the decedent.

10. Upon information and belief, it is also known in the police community and well understood by competent and reasonable trained law enforcement personnel that a "hog-tie" in a face down and prone position results in well-known risks of death or serious injury from positional asphyxia. Because of the well-known dangers and substantial risk involved with "hog-tie" face-down restraint, the well accepted police practice is to prohibit "hog-tie" when the person restrained is in a diminished capacity resulting from "excited delirium" also known as "cocaine psychosis", alcohol, a discernable mental condition or any other condition apparent to the deputies. This method of seizure and restraint causes positional asphyxia resulting in serious injury and sometimes death. Many law enforcement agencies have banned the use of the "hog-tie" method of restraint. See, Garth D. Savage et Al, "*Sudden Custody Death Syndrome: The Role of Hogtying*, " Criminal Law Update, at 11 (Fall 1994) .John Granfield, et at., *Pepper Spray and In-Custody Deaths (March 1994),* San Diego Police Department, *Final Report of the Custody Death Task Force* (unpublished, June 1992)(San Diego Study); See Also, Donald T. Rey et al., *Positional Asphyxia During Law Enforcement Transport*, 13 Am. J. Forensic Med. Pathology 90 (1992); Donald T. Reay et al., *Effects of Positional Restraint on Oxygen Saturation and Heart Rate Following Exercise*, 9 Am. J. Forensic Med. Pathology 16 (1988); *THE LETHAL HAZARD OF PRONE RESTRAINT: POSITIONAL ASPHYSXIATION,* Protection &

Advocacy, Inc., Investigative Unit (April 2002; *Restraint asphyxia in in-custody deaths*, *Medical Examiner's Role in Prevention of Deaths*, Lakshmanan Sathyavagiswaran, et al., Legal Medicine (2006); Tina DiDino, et al, Advisory for Care Providers Exploring the Dangers of Positional Asphyxia (2007); Charly D. Miller, *Preventing Restraint Asphyxia*, The Journal, (2007); *Harry J. MacDannald*, M.D.,The Hog-Tie Position and Positional Asaphyxia; Charly D. Miller, RESTRAINT ASPHYXIA - SILENT KILLER, Part One, Two and Three (September 2004). In view of the literature and the risks known to the police community in general it was unreasonable, negligence, gross negligence and with deliberate indifference for the deputies have acted as they did.

11. Upon information and belief, as many as four (4) Defendants at some point unreasonably, negligently, gross negligently, and with deliberate indifference participated in the hog-tie and were wrestling, sitting upon, kicking, and hitting Mr. Ramos, as he suffocated to death while desperately moving his head from side to side in an obvious effort to breathe. Mr. Ramos yelled continuously that he could not breath and that he needed water. The Defendants caused injuries to Mr. Ramos' right upper chest, right lower chest, right arm and forearm, left shoulder, left arm and forearm, left thigh and both his wrists. Mr. Ramos had contusions and lacerations on his scalp, neck and other parts of his body. A copy of autopsy report is attached hereto as **Exhibit `A'.**

12. Based on information and belief, the defendant deputies unreasonably, negligently, grossly negligently and with deliberate indifference ignored existing Cameron County Sheriffs policies and acceptable police practices concerning the "hog-tie" use and face-down prone restraints as applied to the handling and protection of person's of diminished capacity due to drugs, alcohol, a discernable mental condition or any other condition apparent to the deputies, and the appropriate use of reasonable force at the

time and in the manner used. Instead, they used deadly force as defined in the Texas Penal Code, Section 9.32, and in violation thereof, when it was unreasonable to use the hog-tie in a face down prone position under the circumstances and was excessive deadly force.

13. The Defendants were additionally unreasonable, negligent, grossly negligent, with deliberate indifference in the manner and time in which they seized and restrained JOSE ERNESTO RAMOS, in complete disregard for the preservation of his life, and in doing so they caused his death by asphyxiation by their cumulative conduct.

14. Upon information and belief, and in the alternative, the Defendant County and Sheriff's Department unreasonable, negligently, gross negligently and with deliberate indifference failed to implement and put into practice a policy against the use of hog-tie and face down prone position restraints as a means of restraining a person seized and restrained. The failure to create, establish, adopt, implement, and put into practice a policy(ies) to prohibit the use of hog-tie and face down restraints of a persons in a diminished capacity resulting from "excited delirium" also known as "cocaine psychosis", alcohol, a discernable mental condition or any other condition apparent to the deputies was unreasonable under the circumstances and with deliberate indifference. Failure to implement an anti hog-tie policy by the Defendant Cameron County Sheriff's Department was unreasonable and with deliberate indifference in the face of the established practice in the law enforcement community. The Defendants, knew or should have known that it was well established that the use of hog-tie restraint in a face down prone position involving a person in a diminished capacity due to drug use and cocaine psychosis, alcohol, a discernable mental condition or any other condition apparent to the deputies causes positional asphyxia resulting in serious injury and death. The Defendants, knew or should have known that at least 70 percent of the

nations police departments, including Detroit, New York, and Los Angeles, have banned hog-tying." *Criminal Law Update at* 15. Since the San Diego Study, San Antonio, Dallas, Austin, Corsicana and the Texas Department of Public Safety have banned the use of hogtying. Said conduct by the Defendants was in violation of the decedent's Fourth Amendments Rights under the United States Constitution.

**B. Facts Relating to Supervisory Liability and Monell Claims:**

1. All paragraph herein above alleged are incorporated as if plead verbatim. Upon information and belief, and in the alternative, the Cameron County Sheriffs Office had written policies, procedures, rules, regulations and/or guidelines concerning the appropriate use of force during arrests as well as a written policy specifically barring the use of "hog-tie" restraints due to the substantial risk of causing serious injury or death in the use of this method of restraint. Its deputies and supervisors unreasonably, negligence, gross negligence and with deliberate indifference failed to abide and comply with such policies in violation of the decedent's Fourth Amendment rights. The execution of such a policy, custom, or practice was made by its officials or those whose edicts may fairly be said to represent official policy inflicted the injury and death upon JOSE ERNESTO RAMOS.

2. Upon information and belief, prior to January 27, 2006 and despite these written directives, Cameron County Sheriffs Office deputies, including, without limitation, the defendant deputies were allowed to utilized excessive force in effectuating arrests including the use of hog-tie and face-down prone restraint. Upon information and belief, these prior acts of excessive force involved suspects with diminished capacity as herein above alleged. These unconstitutional practices of utilizing excessive force including face-down and hog-tie restraints were known or should have been known to by the sheriff's supervisors and the Cameron County Sheriff' Office, yet these supervisors and the Cameron County Sheriffs Department

acted unreasonably, negligently, gross negligently and with deliberate indifference in training and supervision of said officers while restraining a suspect such as the decedent. The execution of such a policy, custom, or practice was made by its officials or those whose edicts may fairly be said to represent official policy inflicted the injury and death upon JOSE ERNESTO RAMOS.

3. Alternatively, the Defendant County and Sheriffs Department failed to implement and put into practice a policy against the use of hog-tie and face down as means of seizing and restraining a person. The failure to create, adopt, implement and prohibit the use of hog-tie and face down seizure and restraints of a person with a diminished capacity as alleged above was unreasonable, negligence, gross negligence and with deliberate indifference under the circumstances. Failure to implement an anti hog-tie policy by the Defendant Cameron County Sheriff's Department was unreasonable in the face of the known risks and established practice in the law enforcement community. The Defendants, knew or should have known that it was well established that the use of hog-tie in a face down prone position involving a person in a diminished capacity, as alleged, due to drug use and cocaine psychosis, "excited delirium" would lead to substantial risk of death or serious injury. The Defendant, knew or should have known that at about 70 percent of the nations police departments, including Detroit, New York, and Los Angeles, have banned hog-tying. *Criminal Law Update at 11.* Since the San Diego Study, San Antonio, Dallas, Austin, Corsicana and the Texas Department *of* Public Safety have banned the use *of* hog-tie. *Id.* Said conduct by the Defendants was in violation of the decedent's Fourth Amendments rights. See also, John Granfield, et al., *Pepper Spray and In-Custody Deaths, International Association of Chiefs of Police (March 1994).* The execution of such a policy, custom, or practice was made by it officials or those whose edicts may fairly be

said to represent official policy inflicted the injury and death upon JOSE ERNESTO RAMOS.

4.    In the alternatively, the defendant deputies ignored the Cameron County Sheriffs policies and acceptable police practices concerning face-down and "hog-tie" restraints, in the seizure and arrest of the decedent who was person of diminished capacity and therefore failed to use reasonable force at the time and in the manner used on the decedent. Instead, they used deadly force as defined in the Texas Penal Code, Section 9.32 when it was unreasonable to use the hog-tie and face down prone position restraint under the circumstances and was excessive. *Robinette v. Barnes, 854 F. 2d 909, 911-12 (6th. Cir. 1988); Gutierrez v. City of San Antonio, 139 F.3d 441 (5th Cir. 1998)(the definition of deadly force and Garner's holding to have been clearly established prior to November 1994); Cruz v. City of Laramie, Wyoming, 239 F. 3d 1183(10th. Cir.2001).* The Defendant, Cameron County Sheriffs Department of the conduct of the defendant deputies but followed its custom and practice of permitting such deputies to use the methods of restrained herein alleged. The execution of such a policy, custom, or practice was made by it officials or those whose edicts may fairly be said to represent official policy inflicted the injury and death upon JOSE ERNESTO RAMOS.

5.    As a direct and proximate cause of the Defendants' actions and omissions taken under color of state law, JOSE ERNESTO RAMOS has been deprived his rights secured by the Fourth Amendments to the United States Constitution. See *Lugar v.Edmondson Oil Co., 457 U.S. 922, 936-37, 102 S. Ct. 2744, 2753 (1982); Gutierrez, supra, Reed v. City of Chicago, 77 F.3d 1049, 1051 (7th Cir. 1996); Cruz v. City of Laramie, Wyoming, 239 F. 3d 1183(10th. Cir.2001).*

**IV. Claims**

**A. FIRST CLAIM FOR RELIEF : 42 U.S.C §1983 AS TO THE INDIVIDUAL**

**DEFENDANTS:**

1.   All Paragraphs herein plead are respectfully alleged and reincorporated throughout this entire Complaint.

2.   At all times mentioned herein, Defendant Cameron County Sheriffs Department employed the individual defendants, failed to adopt and anti-hog policy, failed to train said deputies, failed to properly supervise said deputies, failed to monitor the decedent during the hog-tie, and alternatively had a custom and practice of permitting its deputies to use the hog-tie face down prone position method of restrained in clear violation of its own policies, procedures, rules and regulations in violation of law.

3.   Alternatively, should it be found that the acts of the deputies were in their individual capacities such claim is made against them for individual liability. Such claim is made for any and all acts of the individual defendants in the search and seizure, *Tennessee v. Garner, 477 U. S. 1, 7 (1985),* by the use of the hot-tie restraint in a face down prone position on a person with diminished capacity. *Gutierrez,* supra; Cruz v. *City of Laramie, Wyoming, 239 F.* 3d 1183 (10th. Cir. 2001). They knew or should have known that it was well established that the use of hog-tie restraint in a face down prone position involving a person in a diminished capacity due to drug use and cocaine psychosis, alcohol, a discernable mental condition or any other condition apparent to the deputies causes positional asphyxia resulting in serious injury and death. *Gutierrez v. City of San Antonio, 139 F.3d 441(5th Cir. 1998); Anderson v. Creighton, 483 U. S. 635,640 (1987).*

4.   During all relevant times mentioned herein the deputies in their individual capacities and as agents and employees of the defendant county, acted under color and pretense of law, under

color of state statutes, ordinances, regulations, policies, processes, procedures, customs and usages of the Defendant Cameron County Sheriffs Department in the search and seizure of the decedent. The individual defendants herein deprived JOSE ERNESTO RAMOS and Plaintiffs of the rights, privileges, and immunities secured to him by the Fourth Amendments to the United States Constitution and the laws of the United States.

5. On January 27, 2006, Defendants, the deputies individually and as agents of the defendant Cameron County Sheriffs Office seized and arrested JOSE ERNESTO RAMOS, as previously described above. The individuals, while in the performance of their duties as deputies for Cameron County under color of law, and while acting in their individual capacities and as agents and employees of Defendant Cameron County, acted unreasonably in seizing, restraining, and arresting Mr. Ramos and such acts were objectively unreasonable, when taken and constituted excessive force, as that is understood and well established in the annals of jurisprudence, all in violation of Mr. Ramos's rights under the Fourth Amendment to the United States Constitution. *See Graham v. Connor, 490 U.S. 386, 396-97, 109 S. Ct. 1865, 1871-72 (1989); Gutierrez v. City of San Antonio, 139 f. 3d 4 41(5th Cir. 1998); Johnson v. City of Cincinnati, 39 F. Sup. (S. D. Ohio 1999); Cruz v. City of Laramie, Wyoming.*

6. The officers acted negligently, gross negligently, willfully, deliberately, maliciously, or with reckless disregard for decedent's clearly established constitutional rights. *Gutierrez, Johnson, and Cruz, supra.*

7. As a direct and proximate result of said violations, Mr. Ramos was killed and plaintiffs suffered the damages as described in an amount to be determined at trial.

**B. SECOND CLAIM FOR RELIEF : 42 U.S.C §1983;MONELL CLAIM:**

1. All paragraphs herein plead are respectfully alleged and reincorporated throughout this entire Complaint.

17

2. The Cameron County Sheriffs Department, by and through its final policymakers, unreasonably, negligently, gross negligently and with deliberate indifference, *City of Canton, Ohio v. Hams, 489 U. S. 378, 388 (1989),* failed to train and inadequately trained and failed to properly supervise its employees deputies regarding the proper use of force; the prohibitions against hog-ties and face-down restraints and the proper use of methods to avoid asphyxia; on the proper monitor of a person in a hog-tie position and the proper response to handling of persons in a diminished capacity. See, Gutierrez *and Cruz, supra. The* Defendants, knew or should have known that it was clearly established that the use of hog-tying in a face down prone position involving a person in a diminished capacity due to drug use and cocaine psychosis would lead to substantial risk of death or serious injury. The Defendant, knew or should have known that at about 70 percent of the nations police departments, including Detroit, New York, and Los Angeles, have banned hog-tying. *Criminal Law Update at 11.* Since the San Diego Study, San Antonio, Dallas, Austin, Corsicana the Texas Department of Public Safety have banned the use of hog-tie. *Id*. Said conduct by the Defendants was in violation of the decedent's fourth amendments rights. Gutierrez, 139 F. 3d. 441 (5th. Cir. 1998).

3. The Cameron County Sheriffs Department, by and through its final policymakers, had actual or constructive notice that the failure to properly and adequately supervise and train its employees as described above would foreseeably result in the violation of the constitutional rights of its citizens, such as Mr. JOSE ERNESTO RAMOS and unreasonably, negligently, gross negligently, and with deliberate indifference failed to properly supervise and train the deputies. *Cruz, supra.* The Defendants, knew or should have known that it was well established that the use of hog-tying in a face down prone position involving a person in a diminished capacity due to drug use and cocaine psychosis would lead to substantial risk of

18

death or serious injury. The Defendant, knew or should have known that at about 70 percent of the nations police departments, including Detroit, New York, and Los Angeles, have banned hog-tying. *Criminal Law Update at 11.* Since the San Diego Study, San Antonio, Dallas, Austin, Corsicana and the Texas Department of Public Safety have banned the use of hog-tying. *Id.* Said conduct by the Defendants was in violation of the decedent's fourth amendments rights. *See Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 936-37, 102 S. Ct. 2744, 2753 (1982)*; City of San Antonio,* 139 F. 3d 441 (5th. Cir. 1998)*; Reed v. City of Chicago,* 77 F.3d 1049, 1051 (7th Cir. 1996); *Cruz*, supra.

4. The Cameron County Sheriffs Department has been negligent, gross negligent, deliberately indifferent and unreasonable in training, disciplining and supervising its deputies regarding, among other subjects, (a) the prohibitions against hog-tie and face-down restraints; (b) the proper use of methods to avoid asphyxia; (c) the proper response to and handling of persons of diminished capacity due to drug use and cocaine psychosis which would lead to substantial risk of death or serious injury,(d) and allowing and ignoring the continued use of the hog-tie prone face down restraint, (e) allowing and ignoring the continued use of the hog-tie prone face down restraint involving a person in a diminished capacity, alleged herein.

5. Based on information and belief, and in the alternative, although the Cameron County Sheriffs Department has a written policy prohibiting the use of "hog-tie" restraint the Cameron County Sheriffs Department's deputies, including the defendant deputies in this case, violated its own policy in the search and seizure of the decedent. Moreover, the defendant supervisor Ltd. Rodriguez and the Cameron County Sheriffs Department's final policymakers have negligently, gross negligently, and with deliberate indifference and unreasonably failed to enforce these prohibitions through proper supervision, training and disciplining.

19

6.  The Cameron County Sheriffs Department's unreasonably, negligently, gross negligently, and with deliberate indifference as demonstrated through the foregoing acts, omissions, and systemic deficiencies were the moving force behind the violation of Mr. Ramos' constitutional rights, and proximately and directly caused the injuries, death and damages herein alleged.

7.  Notwithstanding the Sheriffs Department written policies, as alleged through out, and contrary to minimally accepted police practices, the Defendant Cameron County Sheriffs Department by its unreasonable failure to supervise, train and discipline its deputies through its supervisor, Ltd. Rodriguez, created a custom, pattern and practice of using excessive force in seizing and arresting persons, such as the decedent, in a diminished capacity due to drug use and cocaine psychosis by the use of "hog-tie" and face-down restrains and as part of that custom and practice caused the injuries and death of the decedent.

8.  In furtherance of this custom, pattern and practice, the defendant Cameron County Sheriffs Department unreasonably, negligently, gross negligently, knowingly, recklessly and with deliberate indifference failed to properly put an end to the practice of hog-tying in a face down prone position involving a person in a diminished capacity as herein alleged.

9.  Defendants' seizure and restraint, resulting in asphyxiation of JOSE ERNESTO RAMOS was an unconstitutional display of unreasonable and excessive force that violated JOSE ERNESTO RAMOS's right to be free from unreasonable searches and seizures. *See U.S. Const. Amend. 4, Garner, 471 U.S. at 7, 105 S. Ct. at* 1699; *Harper v. Harris County, Texas, 21 Fad. 597,600 (5ʰ. Cir. 1994).*

10. The above acts or omissions as were undertaken and at the time taken under color of state law resulted in a violation of JOSE ERNESTO RAMOS's Constitutional rights, as stated herein. Thus said policies, customs, and practices of Defendant Cameron County Sheriffs Department

and the deputies as alleged herein and as applied to JOSE ERNESTO RAMOS, were a violation of JOSE ERNESTO RAMOS's Fourth Amendment rights under the United States Constitution and its laws. *See Lugar v. Edmondson Oil Co., 457 U.S. 922, 936-37, 102 S. Ct. 2744, 2753 (1982); City of San Antonio, 139 F. 3d 441 (5th. Cir. 1998); Reed v. City of Chicago, 77 F.3d 1049, 1051 (7th Cir. 1996), Cruz, supra.*

11. As a direct and proximate result, plaintiffs suffered the injuries and damages described above and in amount to be determined at trial.

## C. THIRD CLAIM FOR RELIEF: 42 U.S.C §1983; FAILURE TO MAINTAIN OBSERVATION AND MONITORING:

1. All paragraphs herein plead are respectfully alleged and reincorporated throughout this entire Complaint.

2. The Defendants singularly and cumulatively unreasonably failed to maintain observation and monitoring of the decedent during and subsequent to the hog-tie and face down in a prone position which said Defendants should have done under the circumstances to observe the color, breathing and level of consciousness of the decedent. It well recognized, established and accepted practice to monitor and regularly oversee the condition of person in such a restraint but the defendants, including Ltd. Rodriguez, failed to do so. *See, Gutierrez, supra.*

3. As a direct and proximate result, plaintiffs suffered the injuries and damages described above and in amount to be determined at trial.

## D. FOURTH CLAIM FOR RELIEF : 42 U.S.C §1983; FAILURE TO INTERCEDE:

1. All paragraphs herein plead are respectfully alleged and reincorporated throughout this entire Complaint.

2. The Defendants, without justification, assaulted, improperly seized and restrained

JOSE ERNESTO RAMOS causing severe physical injuries and death.

3. After the assault and battery was initiated numerous other officers who were employees of the Defendant Cameron County Sheriffs Office arrived at the scene and negligently, gross negligently and with deliberate indifference failed to intercede to prevent the assault, battery, the use of the hog-tie in a face down prone position and thereby the death of JOSE ERNESTO RAMOS.

4. Upon arrival, these supervisory deputies witnessed the unlawful assault and asphyxiation of JOSE ERNESTO RAMOS, and failed to intercede to halt the deadly acts of the hog-tie and asphyxiation.

5. The Defendant, Cameron County Sheriffs Department by and through its deputy, Ltd. Rodriguez, after having been briefed and having seen and reviewed the circumstances of the seizure and arrest of the decedent, negligently, gross negligently and deliberate indifference and unreasonably failed to act to prevent and to release the decedent from the hog-tie and thereby participating in the unreasonable act of causing his death.

6. As a direct and proximate result of the Defendants' failure to intercede, JOSE ERNESTO RAMOS suffered severe physical injuries and mental anguish until his ultimate death.

7. As a direct and proximate result, plaintiffs suffered the injuries and damages described above and in amount to be determined at trial.

**E. FIFTH CLAIM: FAILURE TO PROVIDE FOR PROPER AND TIMLEY MEDICAL CARE; 42 USC 1983**

1.The Deputies including the supervising deputy failed to provide timely and proper medical care for injuries received while seized and restrained in a hog-tie face down

22

and prone position.

## F.  SIXTH CLAIM FOR RELIEF: WRONGFUL DEATH

1.  All paragraphs herein plead are respectfully alleged and reincorporated throughout this entire Complaint.

2.  The unreasonable, wanton and reckless, negligent, intentional, gross negligent and acts or omissions of Defendants negligently and proximately caused the death of JOSE ERNESTO

RAMOS. JOSE ERNESTO RAMOS's death resulted in the loss of support, society, services, and further causing mental anguish to his mother, Rosa Montes Ramos; his wife, Rosa Cristina Ramos; and his sons, Joe Edward Ramos, John Aaron Ramos, Ricardo Jimmy Ramos, and Vicente Chaires II.

3. As a direct and proximate result, plaintiffs suffered the injuries and damages described above and in amount to be determined at trial.

## F. SEVENTH CLAIM FOR RELIEF: LOSS OF CONSORTIUM

1.  All paragraphs herein plead are respectfully alleged and reincorporated throughout this entire Complaint.

2.  The unreasonable, wanton and reckless, negligent, intentional, gross negligent acts or omissions of Defendants negligently and proximately caused severe and fatal injury and death to JOSE ERNESTO RAMOS.

3.  As a direct and proximate cause of Defendants' unreasonable, wanton and reckless, negligent, intentional, and bad faith acts or omissions resulted in causing the fatal injury leading to the death of JOSE ERNESTO RAMOS and his family and loved ones are now without his love, affection, society, comfort and support, in particular to his parents, Rosa Montes Ramos; his wife, Rosa Cristina Ramos; and his sons, Joe Edward Ramos, John Aaron Ramos, Ricardo Jimmy

Ramos, and Vicente Chaires II.

4.   As a direct and proximate result, plaintiffs suffered the injuries and damages described above and in amount to be determined at trial.

## G. EITH CLAIM FOR RELIEF: NEGLIGENCE AND GROSS NEGLIGENCE

1. All paragraphs plead herein are respectfully alleged and reincorporated throughout this entire Complaint.

2.   Defendants in assaulting and escalating their attack and lunging towards JOSE ERNESTO RAMOS and in taking him to the ground using the hog-tie and face-down position, if they exist and without admitting, was a violation of the anti-hog-tie policy there breaching their duty of care of ordinary care to a person detained/arrested and specially to one who was in a diminished capacity due to drugs and cocaine psychosis a condition known to the defendants' and were therefore negligent and gross negligent in their acts and omissions.

3.   The defendants' acts of failing to follow established department procedure, rules, regulations were therefore negligent, gross negligent and with deliberate indifference. Such policies and procedures, if they exist, are established for the protection of such individuals as JOSE ERNESTO RAMOS and said policies should have protected the decedent from the acts and omission of the defendants. The defendant's acts of negligence were a so violent that such acts killed JOSE ERNESTO RAMOS.

4.   Alternatively, in the absence of any established department policies and procedures for the detention and arrest of a suspect, the defendants violated their duty of ordinary care in taking JOSE ERNESTO RAMOS into custody by unreasonably causing severe physical injury and death by their use of the hog-tie face down prone method when it was established in the law enforcement community that such method results in a substantial risk of injury and death. Further, the defendants breached their duty of ordinary care in failing to timely call, monitor, and

24

providing for medical attention and services after they hog-tied and assaulted and severely injured J O S E ERNESTO RAMOS which failure to led to his untimely death.

5.   As a direct and proximate cause of Defendants' failure to conform to the appropriate standard of care in restraining a person in a diminished capacity due to drugs and cocaine psychosis, as further alleged above,   and as a result of failing to follow established policy and procedure, if any, for the arrest and seizure Mr. Ramos, Mr. Ramos suffered severe physical and mental anguish and his untimely death.

6. As a direct and proximate result, plaintiffs suffered the injuries and damages described above and in amount to be determined at trial.

## H. NINTH CLAIM FOR RELIEF: NEGLIGENT SUPERVISION

1. All paragraphs plead herein are respectfully alleged and reincorporated throughout this entire Complaint.

2.   Based on information and belief and in the alternatively, if the Defendant Cameron County Sheriffs Department had a written policy barring the use of the "hog-tie" and " face-down" restraint, as alleged herein, it negligently, gross negligently, unreasonably and with deliberate indifference failed to enforce such policy on the date and time in question.

3.   Based on information and belief and in the alternatively, the Defendant, Cameron County Sheriffs Department by and through its deputy, Ltd. Rodriguez, after having been briefed and having seen and reviewed the circumstances of the seizure and arrest of the decedent unreasonably failed to act to prevent and to release the decedent from the hog-tie and thereby participating in the unreasonable act of causing his death. Ltd. Rodriguez failure to exercise his supervisory duties in instructing the defendant deputies to release the decedent from the hog-tie and to undertake some other course of restrain or to reposition the decedent and such conduct was unreasonable under the circumstances.

4. Based on information and belief the Defendant Cameron County Sheriffs Department had a written policy prohibiting the use of the hog-tie method of restrained in a facedown prone position and Ltd. Rodriguez unreasonably failed to enforce and supervise his deputies pursuant to said policy.

5. Based on information and belief the Defendant Cameron County Sheriffs Department has a written policy prohibiting the use of the hog-tie method of restrained and Ltd. Rodriguez unreasonably failed to enforce and supervise his deputies pursuant to said policy.

6. Defendant Cameron County Sheriffs Department and it deputies negligently, gross negligently, with reckless disregard, willfully and with deliberate indifference used the hog-tie in a face down prone position and assaulted JOSE ERNESTO RAMOS causing severe physical pain and mental anguish and Death. As a direct and proximate cause of Defendants' conduct as alleged in this complaint, Plaintiffs have suffered damages, including, but not limited to loss of love, support and society from JOSE ERNESTO RAMOS, in amount to be determined at trial.

7. As a direct and proximate cause of said violations, plaintiffs suffered the damages described above in an amount to be determined at trial. Wherein it is alleged that the Defendant Cameron County Sheriffs Department acted or failed to act includes, for purposes of this lawsuit, Omar Lucio, Sheriff of Cameron County and the office of Constable, Precinct 6, as its officials and final policy makers within the Cameron County Sheriffs Department, and the Constable's Office.

8. By reason of the foregoing, Ltd. Rodriguez, as supervising deputy who had direct oversight responsibility, while at the scene of the incident, for the individual officers involved in the hog-tie in a face down prone position and asphyxiation of Mr. JOSE ERNESTO RAMOS acted unreasonably, negligently, gross negligently, with reckless disregard and deliberate indifference to the rights of the decedent, in his supervision and investigation of the circumstances and events at the time that the events were unfolding

and thereby causing and resulting in the injury and death of Jose Ernesto Ramos and the violation of the decedent's Fourth Amendment Rights under the United States Constitution all for which damages are herein sought and to be determined at the time of trial.

## I. TENTH CLAIM FOR RELIEF: ASSAULT AND BATTERY

1. All paragraphs plead herein are respectfully alleged and reincorporated throughout this entire Complaint.

2. The actions of Defendants constitute an assault and battery upon the person of JOSE ERNESTO RAMOS.

9. The act of Defendants in assaulting Mr, Ramos resulted in physical and mental anguish, and ultimately resulted in his untimely death all for which damages are herein sought and to be determined at the time of trial.

## J. ELEVENTH CLAIM FOR RELIEF: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

1.All paragraphs plead herein are respectfully alleged and reincorporated throughout this entire Complaint.

2.In the Alternative, the acts of the defendants acted intentionally and with reckless disregard and the plaintiff did suffer extreme and severe distress due to defendants' outrageous and extreme conduct which conduct proximately caused plaintiff's emotional distress. This claim is brought alternatively in the event that there exists no other cause of action that Plaintiff may maintain against defendants, damages for which plaintiff seeks at the time of trial.

## PRAYER FOR RELIEF

**WHEREFORE, Plaintiffs pray that the Court:**

A. Award Plaintiffs compensatory damages against Defendants in an amount to be determined at trial, including but not limited to pain and suffering of the deceased;

B. Award Plaintiffs punitive damages for their civil rights claim against individual Defendants in an amount to be determined at trial;

C. Award Plaintiffs the reasonable funeral and burial expenses incurred as a result of his wrongful death;

D. Award Plaintiffs damages for their loss of consortium, pain and suffering;

E. Award reasonable attorney fees pursuant to 42 U.S.C. § 1988;

F. Declare Defendants actions unconstitutional and enjoin Defendants from further unconstitutional violations complained of herein;

G. Grant the Plaintiffs a trial by jury; and

H. Grant such other relief as may be provided by law and just and equitable.

Respectfully submitted,

**RODRIGUEZ, TOVAR & LOPEZ, LLP**
**1111 W. NOLANA**
**McALLEN, TEXAS**
**956-687-4363 OFFICE**
**956-687-6415 FAX**
**Raymundo Lopez**
**SBN. 12569500**
**Fed. No. 3832**
**Ezequiel Tovar**
**SBN. 20151750**

**FRANCISCO J. RODIRGUEZ**

**SBN. 17145800**

**FED. NO. 3083**