3. Defendant FNUK Garcia, individually and in his official capacity as a Deputy Sheriff was employed, at all relevant times and at the time of the death of JOSE ERNESTO RAMOS, with the Defendant Cameron County Sheriff's Department. At all times relevant to this action, Defendant Garcia acted under color of law.

4. Defendant, Lt. Raul Rodriguez, individually and in his official capacity as a Deputy Sheriff was employed, at all relevant times and at the time of the death of JOSE ERNESTO RAMOS, with the Defendant Cameron County Sheriffs Department. At all times relevant to this action, Defendant Garcia acted under color of law.

5. Defendant, Sheriff Omar Lucio, in his official capacity as Sheriff of the Cameron County Sheriff's Department an integral part of the County of Cameron, a political subdivision, organized and existing under the laws of the State of Texas, for his acts and those of sheriff's deputies Oyervidez, Cortez, Garcia and Ltd. Rodriguez who were at all relevant times employees of the sheriff's department acting under of color of law whose acts of misconduct are attributable to the Sheriffs' as agents of the Sheriffs and its Department. At all times throughout this Complaint, it is alleged and incorporated herein by reference, that said peace officers' and/or deputies' actions of seizing and restraining and causing the death of JOSE ERNESTO RAMOS were objectively unreasonable and the County viz a vi the Sheriff's Department is liable for the Sheriffs and Deputy Sheriffs, Constable and Deputy Constable's actions in causing the injuries and death of MR. JOSE ERNESTO RAMOS.

6. Defendant Sgt. Refugio Perez, individually and in his official capacity as a Precinct 6 Deputy Constable for Cameron County, Texas was employed, at all relevant times and at the time of the death of JOSE ERNESTO RAMOS, with the Defendant Cameron County Constables Office. At all times relevant to this action, Defendant Perez acted under color of law.

3



7. Defendant Constable, Merced Burnias, in his official capacity as employer of Sgt. Refugio Perez as a deputy constable in Precinct 6, for Cameron County, Texas did employ said deputy at all relevant times and at the time of the death of JOSE ERNESTO RAMOS. At all times relevant to this action, Defendant Burnias acted under color of law for and within the duties of the office of Constable.

8. Defendant, The Office of Constable, Precinct 6, Cameron County, Texas by and through its Constable, Merced Burnias.

## III. FACTS

### A. Search and Seizure: Arrest and Restraint

1. All paragraphs herein are respectfully alleged and reincorporated throughout this entire Complaint.

2. JOSE ERNESTO RAMOS was a 37 year-old Hispanic male who was a native of San Benito, Cameron County, Texas. At the time that he was killed, MR. JOSE ERNESTO RAMOS, was gainfully employed with Sea Ranch Restaurant. He had been working there for a year.

3. On information and belief, the events began in the early morning hours of January 27, 2006, when Rosa M. Ramos, the wife of the decedent, called 911 because her husband had come home delusional and in fear that someone was wanting to hurt him. Mrs. Ramos called 911 so that deputies would come to her home and calm her husband down. Sheriff's Deputy Robert Oyervidez was dispatched to the Ramos residence in reference to a domestic disturbance in progress involving and intoxicated male subject possibly high on some type of narcotics. Shortly after the call Sheriff's Deputy, Juan Cortez, III, arrived at the Ramos residence and was the first deputy on the scene since he was already in route. Upon reaching the front door Deputy Cortez

heard the decedent, JOSE ERNESTO RAMOS, yelling vulgar language toward his wife. Deputy Cortez, made contact with the decedent and noticed that he was acting very strangely, hallucinating like if more people were inside the room, trying to fight him. Deputy Cortez, found and should have recognized that the decedent was under some mental condition of paranoia and in fear of someone looking for him. He was combative, delirious and delusional. JOSE ERNESTO RAMOS was, therefore, in a state of apparent diminished capacity when Deputy Cortez first arrived and subsequently when Deputy Sheriff Robert Oyervidez and Sgt. Refugio Perez, Deputy Constable, arrived. These deputies knew from the initial 911 call by Mrs. Ramos and subsequently by the decedent's behavior that the decedent was in a state of apparent diminished capacity due to drugs, alcohol, other discernable mental condition, or some other condition apparent to the deputies at the time. When Deputy Cortez, entered the home the decedent was in a delusional state and saying that he was not going to leave with them, ie. not leaving with the phantom people in the room that were after him trying to fight him. If at all, the decedent was refusing to cooperate with the phantom people in the kitchen not the deputy. The deputy was seen as one of the phantom people, not an officer of the law. Moreover, a person in an "excited delirium" state does not comprehend verbal directives. The Deputies unreasonably failed to act in accordance with the appropriate conduct after recognizing that the demeanor and behavior of the decedent which was one of a state of diminished capacity due and induced by narcotics, alcohol, was under a discernable mental condition or some other condition apparent to the deputy(ies) at the time. On attempt by Deputy Cortez to restrain him a scuffle ensued. Deputy Cortez scuffled with the decedent in the kitchen; wrestled him to the floor and continued to strike him. The scuffle continued outside the

home after the decedent was dragged on the floor outside allegedly in a continued effort to restrain him. By then, however, the decedent was so physically exhausted he was no longer combative. Thereafter, Sgt. Perez arrived. He too joined the scuffle allegedly in aid of Deputy Cortez to restrain and arrest the decedent. Shortly thereafter, Deputy Sheriff Oyervidez and Deputy Sheriff, FNUK Garcia also arrived to assist. The decedent was restrained with handcuffs at the wrists behind his back and at the ankles with his legs bent backwards and toward his back. The wrists and the ankle iron shackles were tied together. This type of restrained is generally known as the "hog-tie". The decedent was hog-tied and placed in a face down prone position by the four Deputies, Oyervidez, Garcia, Cortez and Sgt. Perez. He was further restrained by having one of the deputies, weighing about 300 pounds, sit on the decedent after he was hog-tied, and placed a knee to his neck. He was pushed down headfirst onto the ground such that the hospital emergency attendants noticed gravel on his face. The decedent was heard by his wife and neighbors yelling and asking to wipe off the blood from his face; asking for water to drink and complaining that he could not breath. After being hog-tied he was no longer combative. In fact, he had stopped being combative after being dragged from inside the house early in the scuffle. The deputies nevertheless ignored his pleas. An offer of water by a neighbor was refused by the deputies. The decedent stopped breathing and became motionless. When EMS arrived he was still hog-tied. The decedent was kept hog-tied in a face down prone until his arrival at Valley Baptist Medical Center on the same day. A neighbor heard one of the deputies call for a Justice of the Peace. JOSE ERNESTO RAMOS was "dead on arrival" at Valley Baptist Medical Center.

4. Upon information and belief, Mr. Ramos had been drinking and had consumed cocaine during the afternoon or evening of January 27, 2006 of which the deputies

6

Advocacy, Inc., Investigative Unit (April 2002; *Restraint asphyxia in in-custody deaths, Medical Examiner's Role in Prevention of Deaths*, Lakshmanan Sathyavagiswaran, et al., Legal Medicine (2006); Tina DiDino, et al, Advisory for Care Providers Exploring the Dangers of Positional Asphyxia (2007); Charly D. Miller, *Preventing Restraint Asphyxia*, The Journal, (2007); Harry J. MacDannald, M.D.,The Hog-Tie Position and Positional Asaphyxia; Charly D. Miller, RESTRAINT ASPHYXIA - SILENT KILLER, Part One, Two and Three (September 2004). In view of the literature and the risks known to the police community in general it was unreasonable, negligence, gross negligence and with deliberate indifference for the deputies have acted as they did.

11. Upon information and belief, as many as four (4) Defendants at some point unreasonably, negligently, gross negligently, and with deliberate indifference participated in the hog-tie and were wrestling, sitting upon, kicking, and hitting Mr. Ramos, as he suffocated to death while desperately moving his head from side to side in an obvious effort to breathe. Mr. Ramos yelled continuously that he could not breath and that he needed water. The Defendants caused injuries to Mr. Ramos' right upper chest, right lower chest, right arm and forearm, left shoulder, left arm and forearm, left thigh and both his wrists. Mr. Ramos had contusions and lacerations on his scalp, neck and other parts of his body. A copy of autopsy report is attached hereto as **Exhibit `A'**.

12. Based on information and belief, the defendant deputies unreasonably, negligently, grossly negligently and with deliberate indifference ignored existing Cameron County Sheriffs policies and acceptable police practices concerning the "hog-tie" use and face-down prone restraints as applied to the handling and protection of person's of diminished capacity due to drugs, alcohol, a discernable mental condition or any other condition apparent to the deputies, and the appropriate use of reasonable force at the

time and in the manner used. Instead, they used deadly force as defined in the Texas Penal Code, Section 9.32, and in violation thereof, when it was unreasonable to use the hog-tie in a face down prone position under the circumstances and was excessive deadly force.

13. The Defendants were additionally unreasonable, negligent, grossly negligent, with deliberate indifference in the manner and time in which they seized and restrained JOSE ERNESTO RAMOS, in complete disregard for the preservation of his life, and in doing so they caused his death by asphyxiation by their cumulative conduct.

14. Upon information and belief, and in the alternative, the Defendant County and Sheriff's Department unreasonable, negligently, gross negligently and with deliberate indifference failed to implement and put into practice a policy against the use of hog-tie and face down prone position restraints as a means of restraining a person seized and restrained. The failure to create, establish, adopt, implement, and put into practice a policy(ies) to prohibit the use of hog-tie and face down restraints of a persons in a diminished capacity resulting from "excited delirium" also known as "cocaine psychosis", alcohol, a discernable mental condition or any other condition apparent to the deputies was unreasonable under the circumstances and with deliberate indifference. Failure to implement an anti hog-tie policy by the Defendant Cameron County Sheriff's Department was unreasonable and with deliberate indifference in the face of the established practice in the law enforcement community. The Defendants, knew or should have known that it was well established that the use of hog-tie restraint in a face down prone position involving a person in a diminished capacity due to drug use and cocaine psychosis, alcohol, a discernable mental condition or any other condition apparent to the deputies causes positional asphyxia resulting in serious injury and death. The Defendants, knew or should have known that at least 70 percent of the

nations police departments, including Detroit, New York, and Los Angeles, have banned hog-tying." *Criminal Law Update at* 15. Since the San Diego Study, San Antonio, Dallas, Austin, Corsicana and the Texas Department of Public Safety have banned the use of hogtying. Said conduct by the Defendants was in violation of the decedent's Fourth Amendments Rights under the United States Constitution.

**B. Facts Relating to Supervisory Liability and Monell Claims:**

1. All paragraph herein above alleged are incorporated as if plead verbatim. Upon information and belief, and in the alternative, the Cameron County Sheriffs Office had written policies, procedures, rules, regulations and/or guidelines concerning the appropriate use of force during arrests as well as a written policy specifically barring the use of "hog-tie" restraints due to the substantial risk of causing serious injury or death in the use of this method of restraint. Its deputies and supervisors unreasonably, negligence, gross negligence and with deliberate indifference failed to abide and comply with such policies in violation of the decedent's Fourth Amendment rights. The execution of such a policy, custom, or practice was made by its officials or those whose edicts may fairly be said to represent official policy inflicted the injury and death upon JOSE ERNESTO RAMOS.

2. Upon information and belief, prior to January 27, 2006 and despite these written directives, Cameron County Sheriffs Office deputies, including, without limitation, the defendant deputies were allowed to utilized excessive force in effectuating arrests including the use of hog-tie and face-down prone restraint. Upon information and belief, these prior acts of excessive force involved suspects with diminished capacity as herein above alleged. These unconstitutional practices of utilizing excessive force including face-down and hog-tie restraints were known or should have been known to by the sheriff's supervisors and the Cameron County Sheriff' Office, yet these supervisors and the Cameron County Sheriffs Department

13

acted unreasonably, negligently, gross negligently and with deliberate indifference in training and supervision of said officers while restraining a suspect such as the decedent. The execution of such a policy, custom, or practice was made by its officials or those whose edicts may fairly be said to represent official policy inflicted the injury and death upon JOSE ERNESTO RAMOS.

3. Alternatively, the Defendant County and Sheriffs Department failed to implement and put into practice a policy against the use of hog-tie and face down as means of seizing and restraining a person. The failure to create, adopt, implement and prohibit the use of hog-tie and face down seizure and restraints of a person with a diminished capacity as alleged above was unreasonable, negligence, gross negligence and with deliberate indifference under the circumstances. Failure to implement an anti hog-tie policy by the Defendant Cameron County Sheriff's Department was unreasonable in the face of the known risks and established practice in the law enforcement community. The Defendants, knew or should have known that it was well established that the use of hog-tie in a face down prone position involving a person in a diminished capacity, as alleged, due to drug use and cocaine psychosis, "excited delirium" would lead to substantial risk of death or serious injury. The Defendant, knew or should have known that at about 70 percent of the nations police departments, including Detroit, New York, and Los Angeles, have banned hog-tying. *Criminal Law Update at 11*. Since the San Diego Study, San Antonio, Dallas, Austin, Corsicana and the Texas Department of Public Safety have banned the use of hog-tie. *Id*. Said conduct by the Defendants was in violation of the decedent's Fourth Amendments rights. See also, John Granfield, et al., *Pepper Spray and In-Custody Deaths, International Association of Chiefs of Police (March 1994)*. The execution of such a policy, custom, or practice was made by it officials or those whose edicts may fairly be

said to represent official policy inflicted the injury and death upon JOSE ERNESTO RAMOS.

4. In the alternatively, the defendant deputies ignored the Cameron County Sheriffs policies and acceptable police practices concerning face-down and "hog-tie" restraints, in the seizure and arrest of the decedent who was person of diminished capacity and therefore failed to use reasonable force at the time and in the manner used on the decedent. Instead, they used deadly force as defined in the Texas Penal Code, Section 9.32 when it was unreasonable to use the hog-tie and face down prone position restraint under the circumstances and was excessive. *Robinette v. Barnes, 854 F. 2d 909, 911-12 (6th. Cir. 1988); Gutierrez v. City of San Antonio, 139 F.3d 441 (5th Cir. 1998)(the definition of deadly force and Garner's holding to have been clearly established prior to November 1994); Cruz v. City of Laramie, Wyoming, 239 F. 3d 1183(10th. Cir.2001).* The Defendant, Cameron County Sheriffs Department of the conduct of the defendant deputies but followed its custom and practice of permitting such deputies to use the methods of restrained herein alleged. The execution of such a policy, custom, or practice was made by it officials or those whose edicts may fairly be said to represent official policy inflicted the injury and death upon JOSE ERNESTO RAMOS.

5. As a direct and proximate cause of the Defendants' actions and omissions taken under color of state law, JOSE ERNESTO RAMOS has been deprived his rights secured by the Fourth Amendments to the United States Constitution. See *Lugar v.Edmondson Oil Co., 457 U.S. 922, 936-37, 102 S. Ct. 2744, 2753 (1982); Gutierrez, supra, Reed v. City of Chicago, 77 F.3d 1049, 1051 (7th Cir. 1996); Cruz v. City of Laramie, Wyoming, 239 F. 3d 1183(10th. Cir.2001).*

**IV. Claims**

15