IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

MAR 1 7 2009

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | |
|---|---|
| ROSA MONTES RAMOS, *individually,* and as the *Administratrix of the Estate* of JOSE ERNESTO RAMOS; ROSA CRISTINA RAMOS; JOE EDWARD RAMOS; JOHN AARON RAMOS; RICARDO JIMMY RAMOS; and VICENTE CHAIRES II;<br><br>    Plaintiffs,<br><br>v.<br><br>OMAR LUCIO, CAMERON COUNTY SHERIFF; ROBERT OYERVIDEZ; JUAN CORTEZ, III; FNU GARCIA; LT. RAUL RODRIGUEZ; CAMERON COUNTY DEPUTIES; and SGT. REFUGIO PEREZ, PRECINCT 6 DEPUTY CONSTABLE for CAMERON COUNTY, TEXAS;<br><br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§  CIVIL ACTION NO. B-08-122<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

## OPINION & ORDER

BE IT REMEMBERED that on March 17, 2009, the Court considered Defendants Omar Lucio, Robert Oyervidez, Juan Cortez, III, FNU Garcia, Raul Rodriguez, and Cameron County's Motions for Summary Judgment on Federal Claims with Authorities, Dkt. No. 51, and Refugio Perez's Motion for Summary Judgment, Dkt. No. 49.

Plaintiffs Rosa Montes Ramos, Jose Ernesto Ramos, Rosa Cristina Ramos, Joe Edward Ramos, John Aaron Ramos, Ricardo Jimmy Ramos, and Vincente Chaires II ("Plaintiffs") filed suit against the Defendants for alleged civil rights violations that occurred during the arrest and subsequent death of Jose Ernesto Ramos ("Ramos"). Cameron County and the individual Defendants have filed motions for summary judgment claiming that there are no genuine issues of material fact regarding Plaintiffs' claims. Dkt. Nos. 49, 51. Plaintiffs have not filed a response to Defendants' motions.

## I.    Factual Background

On January 22, 2008, Plaintiffs filed suit against Defendants Cameron County ("County"), Robert Oyervidez ("Oyervidez"), Juan Cortez III ("Cortez"), FNU Garcia ("Garcia"), Raul Rodriguez ("Rodriguez"), Omar Lucio ("Lucio"), Refugio Perez ("Perez"), Merced Burnias ("Burnias"), and the Cameron County Office of Constable, Precinct 6 ("Constable"), alleging that Defendants engaged in constitutional violations against Jose Ernesto Ramos during his arrest on January 27, 2006, which ultimately resulted in Ramos' death. Dkt. No. 1. Plaintiffs allege that the officers used excessive force in restraining Ramos, including using a hog-tie restraint that they should have known was excessive given that Ramos was suffering from a cocaine-induced psychosis. *Id.* Plaintiffs allege both state and federal claims, including that the County's Sheriff's department ("Department") had a policy against use of a hog-tie restraint by individual officers, that the department knew or should have known that deputies were violating such policy, and that the Department's personnel were not adequately trained against the use of the hog-tie restraint. *Id.* at 14. On September 24, 2008, this court dismissed Defendants Burnias and Constable. Dkt. No. 45. On December 15, 2008, the remaining Defendants filed their instant motions for summary judgment. Dkt. Nos. 49, 51.

The undisputed facts are that Ramos drank alcohol and abused cocaine before his wife called 911 claiming that her husband was acting very strangely and may be high on cocaine. Dkt. No. 1, at 2. Deputies were dispatched to his house. Dkt. No. 51, Ex. 4. Ramos was injured in the struggle that ensued in his home between him and the responding officers. Dkt. No. 1, at 4. Deputies Cortez and Perez handcuffed Ramos' wrists and ankles. *Id.* at 6. An ambulance was called to the house for Ramos. *Id.* Ramos was placed on the ground in a prone position. *Id.* After emergency medical technicians ("EMTs") arrived, Ramos stopped breathing, and CPR was performed. However, Mr. Ramos was pronounced dead at Valley Baptist hospital at 4:41 a.m. *Id.* at 9-10. Defendants dispute that Ramos was placed in a hog-tie restraint by the deputies.

Defendant Perez moves for summary judgment on all claims against him. Defendant argues that (1) on Plaintiffs' excessive force claims, Ramos' death did not result from conduct of Perez, there is no evidence that hog-tying can lead to death or serious

-2-

injury, and Plaintiffs' own medical evidence does not support a conclusion that his death resulted from being restrained by the officers, Dkt. No. 49, at 5-10; (2) Perez is entitled to qualified immunity because his actions were objectively reasonable, *Id.* at 10-15; (3) the failure to provide for proper and timely medical care claim fails because Plaintiffs have failed to show that Perez was subjectively aware of a substantial risk of serious medical harm if medical treatment was delayed until the ambulance arrived, *Id.* at 16; (4) the state law claims must be dismissed because Plaintiffs have elected to seek remedy against the County, *Id.* at 17-18; and (5) there are no factual basis for Plaintiffs' other claims. *Id.* at 16-19.

Cameron County and the other individual defendants move for summary judgment on all federal claims against them.  Defendants argue that there is no evidence of (a) a policy or custom to use excessive force like hog-tying or sitting on suspects, (b) a widespread pattern of conduct of excessive force, (c) that the restraint of Ramos was a cause-in-fact of his death, (d) of any racial animus to support a 42 U.S.C. § 1985 claim, (e) that even if Ramos was hog-tied, that this restraint was objectively unreasonable, (f) that the deputies failed to monitor Ramos, or (g) that there was any subjective awareness of a serious risk of injury or death because of the deputies' conduct. Dkt. No. 51, at 13-17.

## II.   Summary Judgment Standard

Summary judgment is appropriate when the movant has established that the pleadings, affidavits, and other evidence available to the Court demonstrate that no genuine issue of material fact exists, and the movant is thus entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); Piazza's Seafood World, LLC v. Odom, 448 F.3d 744, 752 (5th Cir. 2006); Lockett v. Wal-Mart Stores, Inc., 337 F. Supp. 2d 887, 891 (E.D. Tex. 2004).  "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant." *Piazza's Seafood World, LLC*, 448 F.3d at 752 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  The Court must view all evidence in a light most favorable to the non-moving party. *Piazza's Seafood World, LLC*, 448 F.3d at 752; *Lockett*, 337 F. Supp. 2d at 891.  Factual controversies must be resolved in favor of the non-movant, "but only when there is an

actual controversy, that is, when both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 36 F.3d 1069, 1075 (5th Cir. 1994). Thus, the Court will not, "*in the absence of proof, assume that the nonmoving party could or would prove the necessary facts.*" *Id.* (emphasis in original) (citing Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990)); *see also* TIG Ins. Co. v. Eagle, Inc., Civ. Action No. 05-0179, 2007 WL 861153, at *2 (E.D. La. 2007) (quoting *Little*, 36 F.3d at 1075).

The non-movant has no duty to respond to a motion for summary judgment until the moving party meets its burden of showing that no genuine issue of fact exists. *See Lockett*, 337 F. Supp. 2d at 891 (citing Ashe v. Corley, 992 F.2d 540, 543 (5th Cir. 1993)). Thus, a Court may not grant summary judgment simply because there has been no opposition to the motion. Hibernia Nat'l Bank v. Admin. Cental Sociedad Anonima, 776 F.2d 1277, 1279 (5th Cir. 1985) (citing John v. Louisiana (Bd. of Trustees for State Colleges and Universities), 757 F.2d 698, 709 (5th Cir. 1985)). If the movant fails to meet its initial burden, the nonmovant is not required to respond to the motion. *John*, 757 F.2d at 708. However, if the movant satisfies its burden, the non-movant must then come forward with specific evidence to show that there is a genuine issue of fact. *Lockett*, 337 F. Supp. 2d at 891; *see also Ashe*, 992 F.2d at 543. The nonmovant may not merely rely on conclusory allegations or the pleadings. *Lockett*, 337 F. Supp. 2d at 891. Rather, it must demonstrate specific facts identifying a genuine issue to be tried in order to avoid summary judgment. FED. R. CIV. P. 56(e); *Piazza's Seafood World, LLC*, 448 F.3d at 752; *Lockett*, 337 F. Supp. 2d at 891. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." Ragas v. Tenn. Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998) (quoting Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)). Thus, once it is shown that a genuine issue of material fact does not exist, "[s]ummary judgment is appropriate . . . if the non-movant 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'" Arbaugh v. Y&H Corp., 380 F.3d 219, 222–23 (5th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

III.    **Analysis**

A.    *Plaintiffs' Claims Against the Individual Defendants*

Plaintiffs allege that the individual Defendants violated Ramos' constitutional rights secured by the Fourth Amendment to be free from unreasonable seizures and excessive force. Dkt. No. 1, at 16–23. Plaintiffs allege the deputies used excessive force, failed to intercede on behalf of Ramos, and failed to provide for proper and timely medical care. *Id.* at 16, 21-23. For the purposes of this analysis, the Court assumes that Defendants used a hog-tie restraint on Ramos as Plaintiffs allege, even though the Defendants do not make that admission.

   *1. 42 U.S.C. § 1983*

Title 42, Section 1983 of the United States Code provides a private right of action for redressing federal constitutional violations committed by persons acting under the color of state law. Casanova v. City of Brookshire, 199 F. Supp. 2d 639, 648 (S.D. Tex. 2000); Holland v. City of Houston, 41 F. Supp. 2d 678, 688 (S.D. Tex. 1999). To prevail on a claim under § 1983, a plaintiff must show that a defendant amenable to suit under the statute deprived plaintiff of a constitutional right. *Casanova,* 199 F. Supp. 2d at 649; Brown v. Hill, No. 05-71240, 2006 WL 2844147, at *4 (E.D. Mich. Sept. 29, 2006). Furthermore, the alleged constitutional deprivation must be shown to have been the result of deliberate indifference, and not merely the result of negligent conduct. *Casanova*, 199 F. Supp. 2d at 649 ("The negligent deprivation of life, liberty, or property is not a constitutional violation.") (citing Campbell v. City of San Antonio, 43 F.3d 973, 977 (5th Cir. 1995)). A plaintiff must support his allegations with specific facts establishing the constitutional violation and may not merely rely on conclusory statements. *Casanova*, 199 F. Supp. 2d at 649.

   *2. Qualified Immunity*

Each individual defendant asserts that he is entitled to qualified immunity from suit in the instant matter and has moved for summary judgment on that basis. Dkt. No. 25, at 12. In determining whether an individual acting under the color of state law is entitled to qualified immunity, the Court must undergo a two-step analysis. Pierce v. Smith, 117 F.3d 866, 872 (5th Cir. 1997); *Holland*, 41 F. Supp. 2d at 695. First, the Court must determine

whether Plaintiffs' allegations involve violations of a clearly established constitutional right. *Id.* Individuals acting under the color of state law may be entitled to qualified immunity from civil damages unless they have violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Hope v. Pelzer, 536 U.S. 730, 739 (2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); *Thomas*, 766 F.Supp at 558. In order for a constitutional right to be deemed clearly established "its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violated that right.'" *Hope*, 536 U.S. at 739 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). However, this does not mean that the precise conduct in question must have specifically been found unlawful. *Hope*, 536 U.S. at 739 (stating that "officials can still be on notice that their conduct violates established law even in novel factual circumstances"). Instead, the unlawfulness of the conduct must be apparent. *Id.*

If Plaintiffs are successful in establishing that a clearly established right has been violated, the second step of the analysis is addressed. *Pierce*, 117 F.3d at 872; *Holland*, 41 F. Supp. 2d at 695. The Court must address the "objective legal reasonableness of the defendant's conduct of the circumstances." *Pierce*, 117 F.3d at 872; *Holland*, 41 F. Supp. 2d at 695. Objective reasonableness is gauged by whether at the time all reasonable officials in the same circumstances would have come to the realization that the conduct complained of violated a constitutional provision. *Pierce*, 117 F.3d at 871. Although the question of objective reasonableness may be considered as a question of law when relevant and historic facts are undisputed, "a denial of summary judgment based on a material fact dispute would still be appropriate if there are 'underlying historical facts in dispute that are material to the resolution of the questions whether the defendants acted in an objectively reasonable manner.'" Mangieri v. Clifton, 29 F.3d 1012, 1016 (5th Cir. 1994) (quoting Lampkin v. City of Nacogdoches, 7 F.3d 430, 435 (5th Cir. 1993)); *Pierce*, 117 F.3d at 871. Thus, summary judgment on the basis of qualified immunity will be precluded by conflicting factual accounts of the circumstances surrounding the incident in question and whether the conduct displayed was objectively reasonable. Hillyer v. Tex. Dep't of Corrections, 55 Fed. Appx. 716 (5th Cir. 2002); *Mangieri*, 29 F.3d at 1016, n.6 (citing Johnston v. City of Houston, 14 F.3d 1056, 1061 (5th Cir. 1994)); *Holland*, 41 F.

Supp. 2d at 697.  The purpose of immunity is to protect "all but the plainly incompetent or those who knowingly violate the law," Saucier v. Katz, 533 U.S. 194, 202 (2001) (citations omitted).  Thus, in any § 1983 case alleging a police officer's use of excessive or lethal force, the question is whether no reasonable officer could have believed that she was not using excessive force. See Colston v. Barnhart, 130 F.3d 96, 99 (5th Cir.1997).

The question whether the officers' behavior was objectively reasonable is a question of law for the court, not one of fact for the jury. Hill v. Carroll County, 467 F. Supp. 2d 696, 706 (N.D. Miss. 2006).  If the question were one of fact and thus were one that could be raised only at trial, then the purpose of the qualified immunity doctrine would be frustrated. Id.

In the present case, Plaintiffs allege Ramos' Fourth Amendment rights were violated.  The Court finds that at the time the incident in question occurred, the right to be free from excessive force was clearly established under federal law. Holland, 41 F. Supp. 2d at 696; Thomas, 766 F.Supp at 558.  See Stickney v. Trikes, 909 F.2d 1485, 1990 WL 110855, at *1–2 (6th Cir. 1990) (stating that a change in the legal analysis of an excessive force claim did not change clearly established law, and "[t]he only knowledge that the officers needed was the knowledge that excessive force was not permitted").  Thus, Plaintiffs' claims involve alleged violations of clearly established constitutional rights.

Next, this Court must analyze whether the individual Defendants' actions were objectively reasonable under the circumstances then existing.  Analyzing the evidence presented in this case and the relevant case law, this Court concludes that there is no genuine issue of material fact whether a reasonable officer could have believed that the individual defendants' actions involved the use of excessive force.

The use of the hog-tie restraint is not an issue of first impression for this Circuit. The Fifth Circuit considered whether use of a hog-tie restraint was excessive force in Gutierrez v. City of San Antonio, 139 F.3d 441 (5th Cir.1998).  In Gutierrez, two officers stopped the decedent after observing him wandering half naked at a busy intersection. He admitted to the officers that he was on drugs.  Rather than arrest him, the officers called an ambulance; however, when the EMT tried to placed Gutierrez in the ambulance he began to struggle. The two officers hog-tied Gutierrez after he kicked the EMT in the chest.

After he was placed inside the squad car, Gutierrez began kicking the back of the driver's seat, the metal cage, and the windows of the squad car with his bare feet. Although it was disputed whether or not the officers placed Gutierrez on his stomach in the back seat while hog-tied, by the time they arrived at the hospital only ten minutes later, medical personnel determined that Gutierrez had died. The autopsy report initially indicated that Gutierrez died from a lethal combination of narcotics. When the examiner learned of the hog-tying, the report was amended to include the hog-tying as a contributory cause of death. *Id.* at 444. The plaintiffs in *Gutierrez* sued the officers under § 1983 for violating Gutierrez's Fourth Amendment right against unreasonable seizure, relying heavily on the 1991 San Diego Task Force Study conducted by Donald T. Reay that Plaintiffs rely on in this Complaint. Dkt. No. 1, at 18. The study indicated that the combination of hog-tying a drug-affected person in cocaine psychosis and positional asphyxia (placing them in a face-down prone position) can lead to death. Plaintiffs also rely on an article entitled "Sudden Custody Death Syndrome: The Role of Hogtying," that appeared in the Fall 1994 issue of Criminal Law Update, as did the plaintiffs in *Gutierrez*. *See id.*

Ultimately, the Fifth Circuit concluded in Gutierrez that the officers could not establish qualified immunity because of several material issues of fact, including: (1) whether a reasonable officer would have known of the risks of hog-tying; (2) whether Gutierrez was placed a prone position; (3) whether the San Antonio Police Department warned its officers of the possible dangers of hog-tying prior to the event in question (when it was alleged that the day after the incident, the SAPD sent out a memo "reminding" the officers not to hog-tie); and (4) whether Gutierrez posed a threat of death or serious bodily injury to the officers or others. *Hill*, 467 F. Supp. 2d. at 703.

However, the Fifth Circuit in *Gutierrez* noted that Reay's conclusions were seriously questioned by Dr. Tom Neuman in Price v. San Diego, 990 F.Supp. 1230 (S.D.Cal.1998). Gutierrez, 139 F.3d at 451. The Court observed that subsequent study by Tom Neuman, Restraint Position and Positional Asphyxia, 30 Annals of Emergency Med. 578 (1997), called the Reay study into question. The Court also noted that in light of Dr. Neuman's study, even Dr. Reay conceded that hog-tying is "physiologically neutral." Id. at 1238-39. Accordingly, the district court dismissed all excessive force claims against the officers

-8-

because "little evidence is left that suggests that the hogtie restraint can cause asphyxia." Id. at 1238; Gutierrez, 139 F.3d at 451.

The Gutierrez court had not considered Neuman's study as it was not part of the record. Id. However, this Court concludes that, in light of a rash of studies calling into question the results of the Reay study and in light of the circumstances faced by the deputies in this Case, no jury could conclude that any reasonable officer would know that the individual Defendants' conduct was unreasonable.

In Wagner v. Bay City, Texas, 227 F.3d 316 (2000) the Fifth Circuit noted "that while there were no cases that held [hog-tying] unlawful," the San Diego Study concluded that death could be caused by the presence of all four factors: "(1) drug use, (2) positional asphyxia, (3) cocaine psychosis, and (4) hog-tying ...." Id. at 323. The Fifth Circuit held that in order to overcome a defense of qualified immunity, all four factors must be present. Id. at 323-24. The Court also considered whether the officers had continuously monitored the decedent after using force to restrain him as a mitigating factor. Id. at 324.

More recently, a district court considered the issue of qualified immunity in hog-tie restraint cases. In Hill v. Carroll County, the Court concluded that the officers' use of a hog tie restraint was objectively reasonable in light of a lack of clearly established law prohibiting the hog tie restraint under the circumstances. 467 F. Supp. 2d 696, 704 (N.D. Miss. 2006). The Court noted that the decedent had violently resisted arrest, there was no evidence the officers ever were on notice of the dangers of hog-tying, and that medical study has called into question the Reay study. Id. at 703-05.

In analyzing the current case, this Court notes that since the Neuman study, many research studies have continued to discredit the findings of the Reay study. See Hill v. Carroll County, 467. F. Supp. 2d 696, 704 (N.D. Miss. 2006), Price v. San Diego, 990 F. Supp 1230 (S.D. Cal. 1998); Dkt. No. 49, at 6-7 (reviewing existing medical evidence), Dkt. No. 49, Ex. 4-9. In reaching this conclusion, this Court has reviewed the medical evidence submitted by the parties. This Court concludes that, in light of the medical evidence presented in this case as well as the current state of the medical research, reasonable officers could disagree as to whether it is improper to hog-tie a suspect suffering from cocaine psychosis.

Furthermore, there is no evidence that the officers were ever on notice that hog-tying posed a serious danger of substantial bodily harm or death. Dkt. No. 51, at 25-26. While the Fifth Circuit noted in *Gutierrez* that "San Diego mailed copies of the San Diego Study to police departments around the nation ... in 1992," there is no evidence in this case that the Cameron County Sheriff's Department received a copy nor that the individual officers would have received that information sixteen years later. *See Hill,* 467 F. Supp. 2d 696 at 704. Even if they did receive a copy, a study is not "clearly established law." *Id.*

It is also undisputed that Ramos violently resisted arrest. Plaintiffs also do not dispute that Ramos was six foot, two inches tall and weighed about 240 lbs., making him much larger than some of the officers. Dkt. No. 51, at 29. When officers responded to a domestic disturbance, Ramos was in a delusional state and refused to leave with the officer. Dkt. No. 49, at 12. Cortez attempted to restrain Ramos, but he refused to leave, and a scuffle ensued. *Id.* When the other officers arrived, a woman met them and said "they're over here, he's attacking the officer." *Id.* at 13. Officer Perez observed that Ramos was kicking Cortez and trying to strike or grab a hold of Cortez, and that Cortez appeared physically exhausted. *Id.* The officers helped Cortez restrain Ramos, while Ramos continued to violently struggle. After several minutes, the officers finally put handcuffs on Ramos, but he continued to struggle. *Id.* He finally calmed down, but as they attempted to stand Ramos up, he again tried to pull away, and his legs were shackled to keep him from kicking. *Id.* Even then, Ramos managed to kick officer Perez, and so he was placed on the ground in a prone position. He continued to struggle. *Id.* To try to get Ramos under control, Perez placed his knees on Ramos' back, while Ramos continued to struggle. *Id.* at 14. The deputies proceeded to handcuff the shackles to the cuffs on his back, while Ramos continued to resist. *Id.*

Given these circumstances, the Court finds that the individual officers' actions were reasonable. Ramos was combative and unpredictable throughout the encounter with the officers. The officers used only as much force as was necessary to restrain Ramos and the officers only escalated their restraint of Ramos as he refused to respond to what they had already tried. Therefore, this Court holds that the individual officers are entitled to

-10-

summary judgment on their defense of qualified immunity. Even if the Plaintiffs' factual allegations were true, the officers behavior was objectively reasonable in light of the lack of clearly established law proscribing their method of restraining a violent suspect.

    3. Failure to Monitor

    Plaintiffs further assert that Ramos' rights were violated by the individual officers failing to monitor Ramos during and after he was restrained.

    The failure to monitor claim arises from the course of the arrest. Plaintiffs allege the failure to monitor occurred before Ramos was released from the arresting officer's custody. Therefore, it is analyzed using the Fourth Amendment standard. *Gutierrez*, 139 F.3d at 452 (quoting Valencia v. Wiggins, 981 F.2d 1440, 1445 (5th Cir.1993)). Therefore, under the Fourth Amendment's reasonableness standard, this court will apply an excessive force analysis.

    This Court finds that the Plaintiffs have failed to create a genuine issue of material fact about whether the officers' actions were objectively unreasonable and amounts to excessive force. Throughout the arrest and until he was transferred to the care of the EMTs, Ramos was monitored by the officers, including Perez, a qualified EMT in his own right. Dkt. No. 49, at 16. When Ramos complained to Perez he was having trouble breathing, Perez moved him onto his side. The officers observed his breathing until the EMTs arrived. Dkt. No. 51, at 6. The officers continued to observe his conditions while the EMTs worked on Ramos, and assisted in his care. *Id.* at 7-10. Objectively speaking and based on the evidence presented, Plaintiffs have failed to create a genuine issue of material fact as to the failure to monitor claim.

    4. Failure to Intercede

    Plaintiffs seek to bring a failure to intercede claim against Rodriguez for failing to prevent the hog-tying and for failing to release Ramos from the restraint. Even if an officer did not exert excessive force upon a plaintiff, the officer may still be held liable for failing to protect the plaintiff from excessive force, under a theory of bystander liability. Hale v. Townley, 45 F.3d 914, 919 (5th Cir. 1995); Nowell v. Acadian Ambulance Serv., 147 F.Supp.2d 495, 507 (W.D. La. 2001). The officer must have had a reasonable opportunity to recognize the occurrence of excessive force and a reasonable opportunity to stop the

use of force. Nowell, 147 F.Supp.2d at 507. *See* Snyder v. Trepagnier, 142 F.3d 791, 801 n.11 (5th Cir. 1998) (citing Hale, 45 F.3d at 919).

However, this Court holds that Rodriquez is entitled to qualified immunity on this claim as well. As discussed *supra,* Plaintiffs have failed to create a genuine issue of material fact about whether a reasonable officer could have concluded that the hog-tie restraint was a proper way to contain Ramos. Furthermore, Ramos continued to fight the officers after being placed in the hog-tie. Objectively considering the situation Rodriguez encountered, a reasonable officer could have concluded that there was no need to intercede and release Ramos from the restraint.

### 5. Failure to Provide for Proper and Timely Medical Care

Again, this Court analyzes the Plaintiffs' Fourth Amendment claim to proper and timely medical care to determine whether the individual officers actions were objectively unreasonable and amount to excessive force. This Court finds that the Plaintiffs have failed to create a genuine issue of material fact. Officers summoned EMS to provide medical care to Ramos immediately after he had been restrained. Dkt. No. 51, at 4. While the officers were waiting for EMS to arrive, Perez monitored Ramos' condition. *Id.* at 6. Therefore, the Court finds that the individual Defendants acted reasonably and therefore are entitled to qualified immunity on Plaintiffs' claim for failure to provide for proper and timely medical care.

### 6. Election of tort law remedies

The individual Defendants move to dismiss the tort claims pursuant to TEX. CIV. PRAC. & REM. CODE § 101.106(b) (Vernon 2008). Section 101.106(b) provides that unless the governmental unit consents, the filing of a suit against any governmental unit irrevocably bars the plaintiff's recovery against the employees of the governmental unit regarding the same subject matter. *Id.* The Texas Supreme Court recently considered the extent to which § 101.106(b) bars recovery in Mission Consol. Indep. School Dist. v. Garcia, 253 S.W.3d 653, 657 (Tex. 2008). Subsection (e) provides:

> If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.

-12-

TEX. CIV. PRAC. & REM. CODE § 101.106(e) (Vernon 2008). The section has been extended to include not only tort claims for which the Tort Claim Act waived sovereign immunity, but also operates to bar intentional torts filed against the government and its employees. Mission Consol., 253 S.W.3d at 657-58; Newman v. Obersteller, 960 S.W.2d 621, 622-23 (Tex.1997) (former § 101.106's limiting phrase "under this chapter" operated to bar an intentional tort claim against an employee after a final judgment on a claim involving the same subject matter had been rendered against the governmental unit).

Here, Plaintiffs have filed suit against all Defendants for negligence, gross negligence, assault and battery, and intentional infliction of emotional distress. Dkt. No. 1. Defendants have moved for the dismissal of the individual defendants through this summary judgment motion. Accordingly, the requirements for § 101.106(b) have been met, and the individual Defendants are dismissed from all state tort law claims.

### 7. 42 U.S.C. § 1985

Plaintiffs make a claim under 42 U.S.C. § 1985 without stating a factual basis for the claim. Under 42 U.S.C. § 1985, a plaintiff may have an action for damages against any two or more persons who conspire to deprive the plaintiff of the equal protection of, and equal privileges and immunities under, the laws of the United States. In order to state a cognizable claim under this section, a plaintiff must allege that "(1) the defendants conspired (2) for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, and (3) one or more of the conspirators committed some act in furtherance of the conspiracy; whereby (4) another person is injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States; and (5) the action of the conspirators is motivated by a racial animus." Horaist v. Doctor's Hosp. of Opelousas, 255 F.3d 261, 270 n. 12 (5th Cir. 2001) (quoting Wong v. Stripling, 881 F.2d 200, 202–03 (5th Cir. 1989)). The Court finds that Plaintiffs have failed to allege that any portions of his complaint involve a racially motivated conspiracy. Moreover, even if Plaintiffs had alleged that the conspiracy was the result of racial animus, under Fifth Circuit law, a single legal entity, such as a municipality and its employees, is incapable of conspiring with itself. Accordingly, the Court finds that the Plaintiffs have not pleaded a constitutional violation, and the individual Defendants are

entitled to qualified immunity as to Plaintiffs' 42 U.S.C. § 1985 claim.

## B. Claims against the County

Plaintiffs allege that the County violated Ramos' constitutional rights either by the actions of the individual officers based on respondeat superior or by its failure to train; failure to have a policy preventing; by sanctioning the custom, practice or policy; or failure to monitor its officers' use of the hog-tie restraint, the proper use of force, and the proper response to handling a person with diminished capacity. The Court will examine each of Plaintiffs' claims against Cameron County.

### 1. 42 U.S.C. § 1985

Plaintiffs make a claim under 42 U.S.C. § 1985 without stating a factual basis for the claim. To the extent that this claim is raised, the County is entitled to summary judgment. As discussed above, under 42 U.S.C. § 1985, a plaintiff must allege that "(1) the defendants conspired (2) for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, and (3) one or more of the conspirators committed some act in furtherance of the conspiracy; whereby (4) another person is injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States; and (5) the action of the conspirators is motivated by a racial animus." Horaist v. Doctor's Hosp. of Opelousas, 255 F.3d 261, 270 n. 12 (5th Cir. 2001) (quoting Wong v. Stripling, 881 F.2d 200, 202–03 (5th Cir. 1989)). The Court finds that Plaintiffs have failed to allege that any portions of their complaint involve a racially motivated conspiracy. Moreover, even if Plaintiffs had alleged that the conspiracy was the result of racial animus, under Fifth Circuit law, a single legal entity, such as a municipality and its employees, is incapable of conspiring with itself. See supra, §III.A.7. The Court finds that the Plaintiffs have not stated a factual basis for the claim nor created a genuine issue of material fact. Accordingly, the County is entitled to summary judgment on Plaintiffs' 42 U.S.C. § 1985 claim.

### 2. Official Policy or Custom

The County will be held liable if Plaintiffs allege a violation of constitutionally protected rights inflicted pursuant to an official policy or custom. McKinney v. Irving Indep.

Sch. Dist., 309 F.3d 308, 313 (5th Cir.2002).   Plaintiffs must demonstrate that a constitutional deprivation was suffered, that the deprivation occurred pursuant to a custom or policy of the county, and that there is a direct causal link between the custom or policy and the deprivation.  *See* Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978).  In order to carry this heavy burden, "the plaintiff must generally demonstrate at least a pattern of similar violations."  *Id.*  Moreover, actions lodged against individuals in their official capacity are essentially against the municipality.  Hafer v. Melo, 502 U.S. 21, 25 (1991); Brooks v. George County, Miss., 84 F.3d 157, 165 (5th Cir.1996).  In the Fifth Circuit, official policy and custom are defined as:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.  Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Id*. (quoting Johnson v. Moore, 958 F.2d 92, 94 (5th Cir. 1992)).  A single incident, or the occurrence of relatively few incidents, is not enough to establish the existence of a custom. *See* Pineda v. City of Houston, 291 F.3d 325, 328 (5th Cir. 2002); Campbell v. City of San Antonio, 43 F.3d 973, 977 (5th Cir. 1995)).  The policy or custom must be the proximate cause of the injuries sustained by the Plaintiffs.  *Holland*, 41 F. Supp. 2d at 698.  The decision to implement or formulate the policy must "reflect[] deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Id*. at 699 (quoting Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 411 (1997)).  Municipalities will not be held liable for the acts of their employees under a theory of respondeat superior.  *See* Monell v. Dep't of Soc. Servs. Of City of N.Y., 436 U.S. 658, 663 n.7 (1978); *Holland*, 41 F. Supp. 2d at 699.  Instead, the execution of the custom or policy of the municipality must actually cause the complained-of injury.  *Holland*, 41 F. Supp. 2d at 699.  "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability

-15-

and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Id*. at 699–700 (quoting *Brown*, 520 U.S. at 405).

The County argues that it is entitled to summary judgment on Plaintiffs' § 1983 claim for excessive force. It maintains there is no evidence that the County had a policy, practice, or custom of using excessive force or acting with deliberate indifference during seizures; that the incident in question was the product of a widespread pattern of which the County had notice; that what occurred was anything more than an isolated occurrence; or that any policy or unofficial custom was the cause in fact of the incident. Dkt. No. 51, at 13-14. The County produced evidence to demonstrate the absence of a custom condoning the use of excessive force during the course of seizures. *Id*. at 14-15. It demonstrated that it abides by the Texas Commission on Law Enforcement Officer Standards and Education ("TCLEOSE") by requiring newly hired officers to be certified by the TCLEOSE and making continued certification a condition of employment retention. *Id*. at Ex. 20. Additionally, such evidence shows that the County's policy was applied to the individual officers at the time that they were hired, and that they complied with the policy. *Id*. Additionally, the officers complied with their continuing obligations to remain certified by the TCLEOSE. *Id*.

Based on the foregoing evidence, the Court determines that Plaintiffs have failed to produce evidence establishing a genuine issue of material fact regarding their claim the County had established a pattern or practice so widespread as to constitute a custom that caused the deprivation of Ramos' constitutional rights. Plaintiffs have also failed to produce evidence that any governing body or official with policy-making authority had any knowledge of any custom that caused the deprivation of Ramos' constitutional rights. Accordingly, the Court concludes that the County is entitled to summary judgment on Plaintiffs' excessive force claim under 42 U.S.C. § 1983.

### 3. Failure to Provide Adequate Training or Supervision

In order to assert a claim under § 1983 for failure to provide adequate training, a plaintiff must show that a defendant's failure to train its employees demonstrates a deliberate or conscious choice to jeopardize Plaintiffs' constitutional rights. Snyder v. Trepagnier, 142 F.3d 791, 799 (5th Cir. 1998) (citing City of Canton v. Harris, 489 U.S. 378, 388–89 (1989)). More than an isolated incident of lack of training must be shown in

order to constitute deliberate indifference. Thompson v. Upshur County, Texas, 245 F.3d 447, 459 (5th Cir. 2001); *Snyder*, 142 F.3d at 798. Rather, a plaintiff must generally establish a pattern of lack of training or supervision in order to establish municipal liability. *Thompson*, 245 F.3d at 459; *Snyder*, 142 F.3d at 798. Furthermore, "a plaintiff must allege with specificity how a particular training program is defective" in order for a municipality to be held liable. *Roberts*, 397 F.3d at 293.

Plaintiffs allege that the County failed to provide adequate training to its officers by failing to teach new officers not to use a hog-tie restraint and the proper use of force and the proper handling of persons with diminished capacity. The County argues that there is no evidence in support of this allegation, and as discussed *supra*, the Defendant produced evidence showing that it required its officers to become, and remain, licensed by the TCLEOSE. Dkt. No. 51, at 13-14.

This Court finds that Plaintiffs failed to produce any evidence regarding their allegations that the County failed to adequately train its officers. Plaintiffs may not simply rely on the conclusory allegations of their petition to defeat summary judgment. *See Lockett*, 337 F. Supp. 2d at 891. Instead, they must produce evidence showing specific facts identifying a genuine issue to be determined at trial. FED. R. CIV. P. 56(e); *Piazza's Seafood World, LLC*, 448 F.3d at 752; *Lockett*, 337 F. Supp. 2d at 891.

Based on the foregoing, the Court concludes that there is no genuine issue of material fact as to Plaintiffs' claim that Defendant Cameron County failed to provide adequate training to its officers. Plaintiffs have failed to produce any evidence demonstrating that the County failed to train its officers adequately or that any such failure demonstrated a deliberate choice to jeopardize constitutional rights. Plaintiffs also failed to show that the County engaged in any pattern of lack of training. Therefore, the Court determines that the County is entitled to summary judgment on Plaintiffs' claim under 42 U.S.C. § 1983 for failure to provide its officers with adequate training.

## IV.   Conclusion

Based on the foregoing, the Court **GRANTS** Defendants' Motions for Summary Judgment as to:

-17-

(1)     all claims against Defendants Robert Oyervidez, Juan Cortez, III, FNU Garcia, Raul Rodriguez, and Refugio Perez.

(2)     all Federal causes of action against Defendants Cameron County and Omar Lucio, in his official capacity, including (a) Plaintiffs' claims of failure to adopt an anti-hog-tie policy, or for having a custom or practice permitting the use of the hog-tie restraint; (b) Plaintiffs' claims of failure to train and supervise against the use of excessive force, the use of the hog-tie restraint, and the proper response to handling persons of diminished capacity; (c) Plaintiffs' claim for failure to maintain observation and monitoring; (d) Plaintiffs' claim for failure to intercede; and (e) Plaintiffs' claim for failure to provide for proper and timely medical care.

Accordingly, at this time the only claims that remain pending in the instant action are Plaintiffs' causes of action against Cameron County and Omar Lucio, in his official capacity, for state law violations outlined in Plaintiffs' original complaint. Dkt. No. 1, at 23-28. This Court **ORDERS** the Clerk to dismiss Defendants Robert Oyervidez, Juan Cortez, III, FNU Garcia, Raul Rodriguez, and Refugio Perez from this case.

DONE at Brownsville, Texas, on March 17, 2009.

Hilda G. Tagle
United States District Judge

-18-