IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

MAY 20 2009

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | | |
|---|---|---|
| ROSA MONTES RAMOS, *individually,* <br> and as the Administratrix of the Estate <br> of JOSE ERNESTO RAMOS; <br> ROSA CRISTINA RAMOS; JOE EDWARD <br> RAMOS; JOHN AARON RAMOS; <br> RICARDO JIMMY RAMOS; and <br> VICENTE CHAIRES II; <br> <br> Plaintiffs, <br> <br> v. <br> <br> OMAR LUCIO, CAMERON COUNTY <br> SHERIFF; ROBERT OYERVIDEZ; <br> JUAN CORTEZ, III; FNU GARCIA; <br> LT. RAUL RODRIGUEZ; CAMERON <br> COUNTY DEPUTIES; and SGT. <br> REFUGIO PEREZ, PRECINCT 6 <br> DEPUTY CONSTABLE for CAMERON <br> COUNTY, TEXAS; <br> <br> Defendants. | §§§§§§§§§§§§§§§§§§§§§§§ | CIVIL ACTION NO. B-08-122 |

**ORDER**

BE IT REMEMBERED, that on May 19, 2009, the Court considered and **DENIED** the Plaintiffs' Motion for Reconsideration. Dkt. No. 71.

### I. Factual and Procedural Background

Plaintiffs, the spouse and children of the decedent, Jose Ernesto Ramos ("Ramos"), brought this lawsuit alleging constitutional violations under 28 U.S.C. § 1983 and various common law claims against the Defendants Omar Lucio ("Lucio"), Roberto Oyervidez ("Oyervidez"), Juan Cortez ("Cortez"), Osvaldo Garcia ("Garcia"), Raul Rodriguez ("Rodriguez"), and Refugio Perez ("Perez"). *See* Dkt. No. 1. Plaintiffs allege that the officers used excessive force in restraining Ramos, including using a hog-tie restraint that

1

they should have known was excessive given that Ramos was suffering from a cocaine-induced psychosis. *Id.*

On March 17, 2009, this Court granted Defendants' Motions for Summary Judgment. Dkt. Nos. 49, 51. In its decision, the Court recited the standard for consideration of summary judgment motions, which included a discussion concerning the fact that Plaintiffs had not filed a response to Defendants' Motions for Summary Judgment. Dkt. No. 54. As Local Rule 7.4 states, the failure to respond to such a motion is interpreted as a representation of no opposition. Nevertheless, the Court, as it is required to do, analyzed the facts and evidence presented and determined that the Defendants were entitlement to summary judgment. *See* Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986).

Following this Court's Order, the only pendant claims were the Plaintiffs' state law claims against Cameron County and Sheriff Omar Lucio, in his official capacity. Dkt. No. 54, at 18. The Plaintiffs, having missed the deadline for responding to Defendants' summary judgment motions as well as the deadline to file a motion to alter or amend the judgment under FED. R. CIV. P. 59(e), petitioned this Court to grant them leave to file a motion for reconsideration. Dkt. No. 60. On April 10, 2009, this Court granted the Plaintiffs' motion, and Plaintiffs filed the instant Motion for Reconsideration. Dkt. No. 71. On April 27, 2009, Defendants filed their responses. Dkt. Nos. 74, 75, 76. On May 11, 2009, the Parties submitted a stipulation of dismissal, agreeing to dismiss any pendant state law claims.

In their Motion for Reconsideration, the Plaintiffs only challenge two aspects of this Court's Order granting Defendants' Motions for Summary Judgment. First, Defendants dispute this Court's grant of qualified immunity to the individual defendants. Dkt. No. 71. Second, Defendants dispute this Court's grant of summary judgment on their failure to train claim against Lucio and Cameron County. *Id.* at 2, 9. As these are the only grounds that Plaintiffs raise for reconsideration, this Court will not consider the other aspects of its earlier Order.

## II. Summary of Argument

Plaintiffs raise the following grounds for challenging this Court's Order granting summary judgment. First, Plaintiffs argue that the facts of this case do not allow for this Court to conclude that no genuine issue of material fact exists about whether a reasonable officer could have believed that the individual Defendants' actions involved the use of excessive force. Dkt. No. 71, at 3. Plaintiffs argue that Defendants' action was not objectively reasonable because at the moment that it is alleged that Ramos was hogtied, he did not pose an immediate threat to the safety of the officers. *Id.* Plaintiffs argue that the force that may have been justified at the beginning of the officer's encounter with Ramos was not justified when it is alleged that Ramos was hog tied,. *Id.* Additionally, Plaintiffs argue that Defendants were not presented with the necessity to make a split-second decision as to the degree of force to use, but instead had time to consider what force was necessary. *Id.* at 3-4. Plaintiffs argue that faced with a lack of any articulated justification for their use of force, it was not reasonable under the circumstances. *Id.* at 4. Finally, the factual inconsistencies between the Defendants' account of what transpired requires the input of a jury to determine the reasonableness of their conduct. *Id..*

Second, Plaintiffs argue that the prohibition against the use of the hog-tie restraint was clearly established law. Plaintiffs cite the *Gutierrez v. City of San Antonio* decision that this court analyzed in the original Order, as well as *Sampson v. Hines* for the proposition that qualified immunity is not appropriate for an officer who exerted pressure on a suspect's chest, killing the suspect. Dkt. No. 71, at 7; Gutierrez v. City of San Antonio, 139 F.3d 441 (5th Cir. 1998); Sampson v. Hines, 903 F.2d 400 (5th Cir. 1990); *see also* Champion v. Outlook Nashville, Inc., 380 F.3d 893 (6th Cir. 2004). Plaintiffs argue that these cases are more factually apposite than the ones cited in this Court's original Order. Dkt. No. 71, at 7-8. Plaintiffs note that unlike in the cases this Court cited, the Plaintiffs' expert, Dr. Donald T. Reay, has never changed his opinion about the dangers of asphyxia. *Id.* at 8. Additionally, Plaintiffs argue that at some time in the past, the Cameron County Sheriff's Office received information that hog-tying was improper. *Id.* at 7.

Finally, Plaintiffs argue that Cameron County should be held liable for the actions of the individual Defendants. Plaintiffs argue that because many deputies carry shackles

3

in their patrol cars, it should have been apparent to the County that constitutional violations were a highly predictable consequence of this practice. *Id.* at 9 (citing Burge v. St. Tammany Parish, 336 F.3d 363 (5th Cir. 2003)). Furthermore, a county may be held liable for a single occurrence if there is a possibility of a future violation. *Id. (*citing McClendon v. City of Columbia, 258 F.3d 432, 442 (5th Cir. 2001). Because the County did not train the deputies on the proper use of the hog-tie restraint, it was likely that they would misuse the shackles and will misuse them in the future. *Id.*

In response, Defendants argue that the Plaintiffs have failed to register any meaningful objection to Defendants' time frame or evidence of the circumstances of Ramos' detention. Dkt. No. 75, at 12. Defendants argue that the Plaintiffs have failed to identify any material gap in the factual record that would require the involvement of a jury to consider disputed facts. *Id.*

Second, Defendants argue that Dr. Reay's testimony is hearsay within hearsay, and they have already moved for its exclusion. *Id.* at 12-13. Furthermore, as noted in this Court's opinion, the validity of the Reay study has been called into question. *Id.* at 13; Dkt. No. 54, at 7. Defendants argue that Plaintiffs have failed to show that the individual Defendants were aware that Ramos had been drinking, used cocaine, and was exhibiting cocaine psychosis. *Id.* at 13. Additionally, even if they were, Defendants argue that Plaintiffs have not presented any evidence that the officers were aware of the risks of serious injury associated with use of the hog-tie restraint. *Id.* at 14. Defendants argue that Plaintiffs simply point to testimony of a non-party, Captain Javier Reyna, who had a vague recollection of a pamphlet or advertisement for a type of restraint that a deputy could use as an alternative to restrain an arestee. *Id.* at 14; Ex. C. Defendants argue that this hardly established knowledge of the individual officers nor clearly established law against the use of the hog-tie restraint. *Id.* Defendants argue that the testimony of Sheriff Lucio that they did not know or train for such risks is undisputed by the Plaintiffs. *Id.*

Finally, Defendants argue that because shackles may be used for other methods of restraint rather than just the hog-tie restraint, the Plaintiffs have failed to establish that the County's knowledge officers carried shackles is enough to justify municipal liability. *Id.* at 15. The individual Defendants received training to only use necessary force and met

all minimum training requirements. *Id.* Defendants argue that meeting these requirements is sufficient to prevent municipal liability in failure to train cases. Furthermore, the single occurrence exception is inapplicable because Defendants have not presented a pattern or practice or evidence of other hog-tying cases. *Id.*

### III. Standard for Reconsideration

As Defendants properly identify, the standard normally applied to motions for reconsideration is a very difficult standard–much more difficult than that normally borne by a non-movant opposing a motion for summary judgment. However, Plaintiffs' Motion does not include any statement of the standard under which they believe their motion should be determined. See Dkt. No. 71. Plaintiffs' request to file the instant motion states that they wish to file a "motion for reconsideration." Dkt. No. 60, at 1. Furthermore, their Motion is titled "Plaintiffs' Motion for Reconsideration of Summary Judgment". Dkt. No. 71, at 1. Although the Court concludes that the standard normally applied to Motions for Reconsideration is more appropriate to Plaintiffs' Motion, out of an abundance of caution and to provide Plaintiffs with as great an opportunity as possible to have their claims heard, the Court will analyze Plaintiffs' Motion using the motion for reconsideration standard and the normal summary judgment standard.

The Federal Rules of Civil Procedure do not recognize a Motion for Reconsideration per se. *See* Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 173 (5th Cir. 1990), *abrogated on other grounds*, Little v. Liquid Air Corp., 37 F.3d 1069, 1075 n.14 (5th Cir. 1994) (en banc). Courts usually consider the Motions as one to "alter or amend the judgment" under Federal Rule of Civil Procedure 59(e) if it is filed within ten (10) days after the Court entered final judgment. *See id. See also* Fletcher v. Appel, 210 F.3d 510, 512 (5th Cir. 2000). Motions for Reconsideration are generally disfavored and are not proper tools "to introduce evidence that was available at [the time of the summary judgment motion] but was not proffered, to relitigate old issues, to advance new theories, or to secure a rehearing on the merits." Fontenot v. Mesa Petroleum Co., 791 F.2d 1207, 1219 (5th Cir. 1986). Generally, a Motion for Reconsideration may be granted under Rule 59(e) if the movant shows: (1) the motion is necessary to correct a manifest error of fact or law; (2) the movant presents newly discovered or previously unavailable evidence; (3) the motion is

necessary in order to prevent manifest injustice; or (4) the motion is justified by an intervening change in the controlling law. Fields v. Pool Offshore, 1998 WL 43217, *2 (E.D. La. Feb. 3, 1998), aff'd 182 F.3d 353 (5th Cir. 1999).

Summary judgment is appropriate when the movant has established that the pleadings, affidavits, and other evidence available to the Court demonstrate that no genuine issue of material fact exists, and the movant is thus entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); Piazza's Seafood World, LLC v. Odom, 448 F.3d 744, 752 (5th Cir. 2006); Lockett v. Wal-Mart Stores, Inc., 337 F. Supp. 2d 887, 891 (E.D. Tex. 2004). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant." Piazza's Seafood World, LLC, 448 F.3d at 752 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The Court must view all evidence in a light most favorable to the non-moving party. Piazza's Seafood World, LLC, 448 F.3d at 752; Lockett, 337 F. Supp. 2d at 891. Factual controversies must be resolved in favor of the non-movant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 36 F.3d 1069, 1075 (5th Cir. 1994).

If the movant satisfies its burden, the non-movant must then come forward with specific evidence to show that there is a genuine issue of fact. Lockett, 337 F. Supp. 2d at 891; see also Ashe, 992 F.2d at 543. The nonmovant may not merely rely on conclusory allegations or the pleadings. Lockett, 337 F. Supp. 2d at 891. Rather, it must demonstrate specific facts identifying a genuine issue to be tried in order to avoid summary judgment. FED. R. CIV. P. 56(e); Piazza's Seafood World, LLC, 448 F.3d at 752; Lockett, 337 F. Supp. 2d at 891. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." Ragas v. Tenn. Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998) (quoting Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)). Thus, once it is shown that a genuine issue of material fact does not exist, "[s]ummary judgment is appropriate . . . if the non-movant 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'" Arbaugh v. Y&H Corp., 380 F.3d 219, 222–23 (5th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

### IV. Analysis

*A. Qualified Immunity*

1. Analysis under the motion for reconsideration standard

In their motion for reconsideration, Plaintiffs appear to claim that reconsideration is warranted to correct a manifest error of fact or law. Fields v. Pool Offshore, 1998 WL 43217, *2 (E.D. La. Feb. 3, 1998), *aff'd* 182 F.3d 353 (5th Cir. 1999). In analyzing the Plaintiffs' first claim that this court erred in granting qualified immunity to the individual Defendants, the Court identifies the following facts relevant to a qualified immunity analysis that Plaintiffs claim this Court ignored in its earlier order: (1) Officers Perez, Cortez, Garcia, and Oyervidez all testified that Ramos was not a serious threat of causing bodily harm to anyone including his family,[1] Dkt. No. 71, at 3-4; (2) that while Ramos was being transported from the house to the patrol car, he did not run away, fall, jump, or drag his feet, *Id.* at 4, Ex. E, Oyervidez depo. 36-38; (3) that while Ramos was being held against the police car, he "went limp and went to the ground,"[2] *Id.*, Cortez depo. 141-42; (4) while he was being held against the car, Ramos did not succeed in kicking or hitting any officer,[3] *Id.*, Garcia depo. 28-29, 40; (5) Ramos complained he could not breathe twice, *Id.* at 5; and (6) no one provided water to Ramos, checked his pulse, or performed CPR on him.[4]

---

[1]Plaintiffs include citations to the Depositions of Officers Perez, Cortez, and Oyervidez. Plaintiffs have not included the cited excerpt from the deposition of Officer Perez. Dkt. No. 71, st 4 (citing Ex. E, Perez depo. 149-50, 153-56). The pages cited in the Cortez deposition indicate that Cortez believed Ramos to no longer be a threat while he was being restrained against the car by the officers and when he was shackled, but otherwise there was still a risk of injury from kicking. *Id.*, Cortez depo. 210-211.

[2]However, Cortez states that Ramos did this voluntarily, so that the officers "would have [a] more difficult time with him" and that Ramos continued to kick and fight with the officers. *Id.*, Cortez depo. 141.

[3]However, while he was being held against the car, he continued to try to kick the officers. *Id.*, Garcia depo. 28-29, 40

[4]However, Officer Perez turned him on his side to help his breathing and continued to observe him. *Id.*, Oyervidez depo. 67-68

Oyervidez depo. 67-68. Plaintiffs do not dispute any other evidence that the Court identified as uncontroverted in its original Order.

In analyzing the facts Plaintiff is relying on in this motion for reconsideration, the Court cannot conclude that the omission of any of these facts rises to the level of manifest error. First, the addition of these facts to the record does not materially change the uncontroverted facts on which the Court relied on in its original Order. The uncontroverted facts this Court relied on still support a grant of qualified immunity. At most, Plaintiffs' facts merely fill in the gaps in the timeline this Court described. As previously noted, the uncontroverted evidence showed Cortez attempted to restrain Ramos when he first responded to the radio dispatch, but Ramos refused to leave, and a scuffle ensued. Dkt. No. 49, at 12. Furthermore, as recited in its original Order, the uncontroverted evidence showed that:

> [w]hen the other officers arrived, a woman met them and said "they're over here, he's attacking the officer." *Id.* at 13. Officer Perez observed that Ramos was kicking Cortez and trying to strike or grab a hold of Cortez, and that Cortez appeared physically exhausted. *Id.* The officers helped Cortez restrain Ramos, while Ramos continued to violently struggle. After several minutes, the officers finally put handcuffs on Ramos, but he continued to struggle. *Id.* He finally calmed down, but as they attempted to stand Ramos up, he again tried to pull away, and his legs were shackled to keep him from kicking. *Id.* Even then, Ramos managed to kick officer Perez, and so he was placed on the ground in a prone position. He continued to struggle. *Id.* To try to get Ramos under control, Perez placed his knees on Ramos' back, while Ramos continued to struggle. *Id.* at 14. The deputies proceeded to handcuff the shackles to the cuffs on his back, while Ramos continued to resist. *Id.*

Dkt. No. 54, at 10. This Court concludes that in reconsideration of this Court's earlier Order, the Plaintiffs have failed to present any manifest error in the facts that this Court considered. In considering the record, this Court concludes that it properly considered that although Ramos appeared to calm down at times, he continued to violently resist the officers attempt to control him throughout the period of his detention. When it is alleged that Ramos was hogtied, the uncontroverted testimony of the officers is that Ramos continued to struggle.

Next, the Plaintiffs appear to raise a claim that this Court made a manifest error in the law that it applied in granting qualified immunity to the individual Defendants. Plaintiffs

seek to challenge this Court's finding that there was no clearly established law preventing the use of the hog-tie restraint in this case. Beyond reciting the decision in *Gutierrez v. City of San Antonio*, 139 F.3d 893 (5th Cir. 1998), which this Court addressed in its original Order, the Plaintiffs cite the Fifth Circuit's decision in *Simpson v. Hines*, 903 F.2d 400 (5th Cir. 1990), and the Sixth Circuit's decision in *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893 (6th Cir. 2004). In *Simpson*, the Fifth Circuit held that qualified immunity was not available to ten police officers who entered a detainee's cell when he refused "to surrender . . . contraband or his other personal effects." *Simpson*, 903 F.2d at 401. To overcome the detainee's resistance to the officers' efforts to search his pockets, one officer placed the detainee in a neckhold and one officer sat on his chest while the other officers attempted to handcuff him. *Id.* at 402-03. During this incident, the detainee "was begging for help" and crying for mercy. *Id.* The court concluded that there was sufficient evidence to conclude that these officers "reasonably should have known that in subduing and searching Simpson they maliciously used force which was grossly disproportionate to the need and was calculated to injure Simpson severely." *Id.* at 403.

In *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893 (6th Cir. 2004), the Sixth Circuit declined to grant qualified immunity to the arresting officers. The court recognized that it is clearly established "that putting substantial or significant pressure on a suspect's back while that suspect is in a face-down prone position *after being subdued and/or incapacitated* constitutes excessive force." *Id.* at 903 (emphasis added). There, the suspect was "a mentally retarded individual who had stopped resisting arrest and posed no flight risk." *Id.* at 901.

Both of these cases are easily distinguished from the instant case. Here, the individual Defendants restrained Ramos because he was actively and violently resisting arrest. Even when he had been shackled and was in a prone position on the ground, Ramos continued to fight and resist the officers. He presented a risk of injury to the EMTs who had arrived to treat him. By contrast, *Simpson* involved the attempted restraint of a man already in prison custody in order to search him for contraband, and *Champion* involved the use of restraint on a suspect who had already been subdued.

Second, Plaintiffs argue the cases cited by this Court are easily distinguishable and should have been read to limit the application of *Gutierrez* to their fact situations only, and not to the situation in the current case. However, Plaintiffs' reading of the cases ignores that the decisions in *Price v. San Diego* and *Hill v. Carroll County* call the basic medical evidence underpinning the decision in *Gutierrez* into question. *Price v. San Diego*, 990 F. Supp. 1230, 1238-39 (S.D. Cal. 1998); *Hill v. Carroll County*, 467 F. Supp. 2d 696, 703-05. In light of these recent cases, this Court finds that Plaintiffs have failed to identify any manifest error in the law applied to the case by the Court finding that there was no clearly established law preventing the use of a hog-tie restraint.

2. Analysis under the summary judgment standard

Alternatively, using the standard applicable to the consideration of responses to a motion for summary judgment on the issue of qualified immunity, this Court finds that the Plaintiffs have failed to raise a genuine issue of material fact as to "whether a reasonable officer could have believed that the individual defendants' actions involved the use of excessive [force]." Dkt. No. 71, at 3.

In raising a defense of qualified immunity, the defendant official must initially plead his good faith and establish that he was acting within the scope of his discretionary authority. *Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001). Once the defendant has done so, the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law. *Id.* Because the individual Defendants have pleaded qualified immunity as an affirmative defense, the burden of negating the defense lies with Plaintiffs. Again, they cannot rest on the pleadings; instead, they must show genuine issues of material fact concerning the reasonableness of Trooper Vargas' conduct. *Pierce v. Smith*, 117 F.3d 866, 872 (5th Cir. 1997).

Plaintiffs are required to create a genuine issue as to whether at the time and under the circumstances of the challenged conduct all reasonable officials would have realized that it was proscribed by the federal law on which the suit is founded. *Pierce v. Smith*, 117 F.3d 866, 871 (5th Cir. 1997). In order for qualified immunity to be unavailable, at the time the challenged action occurred the federal law proscribing it must have been clearly

10

established not only as an abstract matter but also "in a more particularized ... sense" such that "[t]he contours of the right" are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 635 (1987). Qualified immunity protects " 'all but the plainly incompetent or those who knowingly violate the law.' " Hunter v. Bryant, 502 U.S. 224, 229 (1991) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

As analyzed *supra* and in this Court's original Order, this Court concludes that the Plaintiffs have not met their burden of showing as a matter of law that the Defendants' conduct was objectively unreasonable under clearly established law existing at the time of the incident. Having analyzed the relevant case law, this Court concludes that, in the situation described in detail in the depositions of the officers, clearly established law did not prohibit the actions taken by the officers. Rather, the officers were presented with a violent suspect who required medical attention. He continued to try to strike the officers and they reasonably believed he may try to hit the EMTs. The Sherriff's office has not specifically prohibited the use of the hog-tie restraint. The only testimony that the officers may have known not to use the restraint was the testimony of a non-party, Captain Javier Reyna, who stated that he may have seen a pamphlet for a device that could be used as an alternative to the hog-tie restraint. Given these circumstances, this Court concludes that clearly established law did not exist to bar the actions taken by the Defendants.

B. County Liability

1. Analysis under the motion for reconsideration standard

Plaintiffs argue that this Court has manifestly erred in not applying a single incident exception to the general requirement that the deprivation of rights occurred pursuant to a custom or policy of the county, and that there is a direct causal link between the custom or policy and the deprivation. *See* Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978); McClendon v. City of Columbia, 258 F.3d 432, 442 (5th Cir. 2001).

The Fifth Circuit has generally rejected the single incident exception. *McClendon*, 258 F.3d at 442. However, in *Brown v. Bryan County, Oklahoma*, 219 F.3d 450 (5th Cir. 2000), the Fifth Circuit found a county liable under the single incident exception where it failed to provide any training or supervision for a young, inexperienced officer with a record

of recklessness. *Id.*; *Brown*, 219 F. 3d at 461. In finding that liability could attach for a single incident, the court stated that "the evidence must establish, under the stringent standards of the Supreme Court's pronouncements in Bryan County, unmistakable culpability and clearly connected causation." *Id.* at 461 (discussing Board of County Commissioners of Bryan County, Ok. v. Brown, 520 U.S. 397 (1997)). In other words, as McClendon notes in his reply brief, the "question is whether it should have been obvious that the failure to train was likely to lead to the injury."

We find that the Plaintiffs have failed to present any manifest error in this Court not applying the single incident exception to the current case. Although the County does not provide specific training for its officers regarding the proper use of the hog tie restraint or prohibiting the use of shackles, there is a difference between a complete failure to train, as in Bryan, and a failure to train in one limited area. *McClendon*, 258 F.3d at 442-43. The officers were each trained to only use necessary force as a part of their training. Dkt. No. 51, at 12. Each met minimum TCLEOSE training requirements. *Id.* Therefore, this Court concludes that the Plaintiffs have failed to present any evidence of manifest error in the law applied granting summary judgment on the issue of municipal liability.

2. Analysis under the summary judgment standard

In the alternative, this Court, applying the standard normally applied in motions for summary judgment finds that the evidence presented by Plaintiffs in regards to their claim, even viewed in the light most favorable to them, fails to present a genuine issue of material fact as to liability for Cameron County. As discussed above, the Plaintiffs have presented no evidence that the failure to train specifically that the lack of training on the very narrow issue of the use of the hog-tie restraint would have prevented the current incident, in light of the evidence that the Defendants had already received ample sufficient training on the proper use of force. Accordingly, this Court finds that the County has met its burden, and grants summary judgment in favor of the County on this claim.

### V. Conclusion

For the reasons discussed above, the Court **DENIES** Plaintiffs' Motion for Reconsideration. Dkt. No. 71. Therefore, this Court's original Order, Dkt. No. 54, granting Defendants' summary judgment on all of the Plaintiffs' federal claims still stands. In light

of the stipulation of the parties seeking to dismiss the state law claims, no pendant claims remain in this case. Therefore, this Court will issue a separate order directing the Clerk to close this case.

DONE at Brownsville, Texas, on May 19, 2009.

_____
Hilda G. Tagle
United States District Judge